MASON *v.* UNITED STATES.

The United States offered to A. an order for 50,000 muskets on certain terms specified, with an agreement that 100,000 would be received if delivered within a time named. A. accepted the offer, and laid out a large sum of money in getting his works in condition to execute the order, and thus and otherwise was able and ready to execute it. Subsequently to this the War Department appointed a commission to adjust all contracts, orders, and claims on the department in respect to arms, its de-

---

* 16 Statutes at Large, 140.

cision to be final and conclusive as respected the department, as to the validity, execution, and sums due or to become due upon such contracts; and invited all persons interested in such orders to appear before it and be heard respecting their claims. Whether A. came before it did not appear. The commission, however, did, without his consent and against his remonstrance, pass on his case, and reported that the order to him be confirmed to the extent of 30,000 muskets, upon condition that he should execute a bond with sureties for the performance of the contract as thus modified, and upon his failure to execute such bond that the original order should be held null. The bond being prepared and sent to him by the department he executed it. *Held*, that such execution was his voluntary act; and that the original contract for the 100,000 muskets was thus changed and modified.

APPEAL from the Court of Claims; the case being thus:

On the 7th January, 1862, the chief of ordnance, General Ripley, by direction of the Secretary of War, made in writing, on behalf of the government, this offer to one Mason, a manufacturer of arms at Taunton, Massachusetts:

"I offer you an order for 50,000 muskets, with appendages, of the Springfield pattern, on the following terms and conditions, viz.:" [Here followed a variety of minute specifications as to the character of the muskets, and the time when they were to be delivered.]

"It is further directed by the War Department that double the number of arms and appendages, viz., 100,000, will be received, if manufactured at your establishment in Taunton, and delivered within the times before specified for the delivery of the 50,000 arms and appendages. All the other terms and conditions of this order remaining unchanged for the additional 50,000."

On the 20th January, 1862, Mason, in writing, accepted the foregoing order, and his acceptance thereof was received by the chief of ordnance.

Mason immediately proceeded to make changes of machinery in his machine works, and to do whatever was necessary to insure the full and complete performance of the agreement, and was able and willing to perform his agreement according to the terms of it. His expenditures for changing his machine works into an armory, as required

by the agreement, amounted to $75,000, and the profits which he would have made upon the muskets ordered, if he had been allowed to perform, would have amounted to $5.25 per musket.

On the 13th March, 1862, the War Department *ordered*—

"That Joseph Holt and Robert Dale Owen be a special commission to audit and adjust all contracts, orders, and claims on the War Department in respect to arms; their decision to be final and conclusive as respects the department on all questions touching the validity, execution, and sums due or to become due upon such contracts, and upon all other questions arising between contractors and the government upon such contracts.

"That the commission should proceed forthwith to investigate all claims and contracts in respect to arms in the department, or pending settlement and final payment, and adjudicate the same."

The order added:

"All persons interested in such contracts may appear in person, but not by attorney, before said commissioners, and be heard respecting their claims, at such time and place as the commissioners shall appoint. All claims that they may award in favor of shall be promptly paid. No application will be entertained by the department respecting any claim or contract which they shall adjudge to be invalid."

On the 15th of May, 1862, the commission, without the consent and against the remonstrances of the claimant, decided and reported to the chief of ordnance:

"That the order to Mr. Mason be confirmed, subject to all its terms, to the extent of 30,000 muskets, upon condition that he shall, within fifteen days after notice of this decision, execute bond, with good and sufficient sureties, in the form and with the stipulations prescribed by law and the regulations, for the performance of the contract, as thus modified, resulting from said order and acceptance; and, *upon his failure or refusal to execute such bond, then the said order shall be declared annulled and of no effect.*"

On the 30th of May, 1862, the chief of ordnance trans-

mitted a copy of this decision to Mason, and also the contract and bond contemplated by the commission in its decision, with the request that he would execute and file them within fifteen days after their receipt by him, if he should " accept the order as confirmed by the commission." Mason thereupon executed such written contract, on the 25th day of June, 1862, whereby he contracted and engaged to furnish to the defendants "30,000 muskets of the Springfield pattern." This contract was performed by both the parties, and no other muskets were ever furnished by Mason to the government.

Upon these facts the Court of Claims, as a conclusion of law, decided:

That the original contract between the parties for the purchase and sale of 100,000 Springfield muskets was changed and modified *by the voluntary act of the parties* in the written contract, 25th of June, 1862, and that the petition of the claimant should be dismissed.

From that decree Mason took this appeal.

*Mr. Thomas Wilson, for the appellant; Mr. G. H. Williams, Attorney-General, and Mr. C. H. Hill, contra.*

Mr. Justice CLIFFORD delivered the opinion of the court.

Parties having claims against the United States for labor or service, or for personal property or materials furnished, which are disputed by the officers authorized to adjust the accounts, may compromise the claim and may accept a smaller sum than the contract price; and where the claimant voluntarily enters into a compromise and accepts a smaller sum and executes a discharge in full for the whole claim, he cannot subsequently recover in the Court of Claims for any part of the claim voluntarily relinquished in the compromise.

Mason contracted to manufacture and deliver 50,000 muskets with appendages, of the Springfield pattern. They were to be in all respects identical with the standard rifle-musket made at the National armory, with the regular ap-

pendages, and were to be so constructed as to interchange with that pattern and with each other in all their parts, and they were to be subject to inspection in the same manner as the arms are which are manufactured at the National armory; and the stipulation was that none should be received except such as passed inspection and were approved by the regular inspectors.   Deliveries were to be made at the times and in the quantities therein specified, and payments were to be made, in such funds as the Treasury Department should provide, on certificates of inspection and receipt by the inspectors, at the rate of $20 for each arm including appendages.   Information was also communicated to the contractor by the War Department that double the number specified in the contract would be received, if manufactured at the contractor's establishment and delivered at the times specified for the delivery of the first 50,000 arms, upon the same terms and conditions as those specified in that contract.

On the 20th of January, 1862, the claimant accepted the offer to manufacture and deliver the second 50,000 muskets and appendages, as proposed in that offer, and duly notified the chief of ordnance of his acceptance of the same in writing.   Pursuant to that arrangement the claimant proceeded to make changes in his machine works, and to do whatever was necessary to enable him to perform his agreement, and the Court of Claims finds that he was able and willing to perform the same, and that he expended $75,000 in changing his machine works into an armory for that purpose, and that if he had been allowed to fulfil the agreement his profits would have amounted to $5.25 per musket.

Complaint is made that the officers of the United States prevented the claimant from performing his contract, and it appears that the Secretary of War, on the 13th of March, 1862, by an order of that date, appointed a special commission, consisting of two members, to audit and adjust all orders and claims on the War Department in respect to ordnance arms and ammunition, providing in the same order that their decisions should be final and conclusive upon the department on all questions touching the validity

and execution of the contracts, and the sums due or to be-
come due upon the same, and upon all other questions
arising out of the contracts between the contractors and the
government.   Whether the claimant ever appeared before
the commission does not appear, but it does appear that the
commissioners, on the 15th of May, in the same year, with-
out the consent and against the remonstrance of the claimant,
decided and reported to the chief of ordnance that the con-
tract of the claimant be confirmed, subject to all its terms,
to the extent of 30,000 muskets, upon the condition that he,
the claimant, shall, within fifteen days after notice of the
decision, execute a bond, with good and sufficient sureties,
in the form and with the stipulations prescribed by law and
the regulations in such cases, for the performance of the
contract as thus modified, and that the contract shall be de-
clared null and of no effect in case he fails or refuses to exe-
cute such a bond.   Due notice was given of the decision to
the claimant, and the chief of ordnance transmitted to him
the draft of the contract and bond contemplated by the de-
cision, with the request that he would execute and file the
same within fifteen days from their receipt *if he should accept
the contract as confirmed by the commission,* and the finding of
the Court of Claims shows that he executed the written con-
tract whereby he contracted and engaged to furnish to the
United States 30,000 muskets of the Springfield pattern;
and the Court of Claims also finds that the contract was per-
formed by both parties, and that no other muskets were ever
furnished to the United States by the claimant.

Much discussion of the case is certainly unnecessary, as it
is as clear as any proposition of fact well can be, that the
claimant voluntarily accepted the modification of the con-
tract as suggested by the commissioners, and that he exe-
cuted the new contract in its place, which he must have
understood was intended to define the obligations of both
parties.   His counsel suggest that he accepted the new con-
tract without relinquishing his claim for damages, arising
from the refusal of the United States to allow him to fur-

nish the whole 100,000 muskets, but the court is unable to adopt that theory, as it is quite clear that he could not have acted with any such motives consistent with good faith towards the War Department, as he must have known that the chief of ordnance supposed when he, the claimant, returned the written contract duly executed, that the whole matter in difference was adjusted to the satisfaction of all concerned. Parties are bound to good faith in their dealings with the United States as well as with individuals, and the court is of the opinion that no party in such a case could be justified, after accepting such a compromise and executing such discharge, in claiming damages for a breach of the prior contract which had been voluntarily modified and surrendered, unless the new contract was accepted under protest or with notice that damages would be claimed for the refusal of the United States to allow the claimant to fulfil the contract which was modified in the new arrangement.

It is contended by the appellant that the case is different in principle from the case of *United States* v. *Adams*,* and the other cases† of a corresponding character decided by this court, and the court is inclined to the same opinion, as it is a plain case of voluntary adjustment between the parties, which all courts hold is final and conclusive. None of those cases proceed upon the ground that such a commission possessed any judicial power to bind the parties by their decision, or to give the decision any conclusive effect. Nor can such a commission compel a claimant to appear before them and litigate his claim, but if he does appear and prosecute it, or subsequently accepts the terms awarded as a final settlement of the controversy, without protest, he must be understood as having precluded himself from further litigation.

Attempt is made in argument to show that the adjustment in this case, so far as the claimant is concerned, was the result of duress, but the charge is wholly unsupported by evi-

---

* 7 Wallace, 463.

† United States v. Child, 12 Wallace, 232; United States v. Justice, 14 Id. 535.

dence of any kind, except that the United States proposed to annul the old ·contract if the claimant refused to accept the modification, which is wholly insufficient to establish such a charge.

Apart from that, it is also suggested that the claimant at that time could have no remedy by suit against the United States, as the transaction preceded the passage of the law establishing the Court of Claims. But he might have applied to Congress for relief, as all other claimants were compelled to do from the organization of the government until the law was passed allowing such parties to prosecute suits against the United States.

Duress, if proved, may be a defence to an action, and it would doubtless be sufficient to relieve a party from the effect of compromise which was procured by such means, but the burden of proof to establish the charge, in every such case, is upon the party making it, and if he fails to introduce any such evidence to support it, the presumption is that the charge is without any foundation.* Acceptance from the government of a smaller sum than the one claimed, even in a case where the amount relinquished is large, does not leave the government open to further claim on the ground of duress, if the acceptance was without intimidation and with a full knowledge of all the circumstances; and the case is not changed because the circumstances attending the transaction were such that the claimant was induced from the want of the money to accept the smaller sum in full, which is not proved in this case.†

Examined in any point of view we think the decision of the Court of Claims is correct.

DECREE AFFIRMED.

The CHIEF JUSTICE, dissenting:

I am unable to concur in the opinion just read. The original contract was honestly and fairly made without taint of

---

* United States *v.* Hodson, 10 Wallace, 409; Brown *v.* Pierce, 7 Id. 214; Baker *v.* Morton, 12 Id. 157.

† United States *v.* Child, 12 Wallace, 232.

fraud.   This is not disputed.   Large preparation at great expense was made by the claimant for the fulfilment of it on his part.   It was violated by the United States without reasonable cause, as I think, as expressly found by the Court of Claims, without the consent, and against the remonstrances of the claimant.   A modified contract, so called, but really a second contract, was then made between the parties, which was fulfilled on both sides; but there is nothing to show that this contract was freely made, or made at all by the claimant in place of the first, or that payment of the sums due under it from the United States was accepted by him in satisfaction of damages for the breach of the first. I think that the United States are not absolved in their dealings with citizens from the obligations of honesty by which individuals are usually controlled, and that the claimant is entitled to damages.