Booth, JucLge,
delivered the opinion of the court:
The plaintiff in this case seeks to reopen settlements made ■ in writing between the Government and itself respecting munition contracts cancelled after the armistice. The plaintiff concedes the force o'f the settlements so made, but challenges their finality upon the grounds of duress. Two contracts were entered into between the plaintiff and the Government, one on January 1, 1918, the other April 30, 1918. The subject matter of both undertakings obligated the plaintiff to forge from steel furnished by the Government a large number of pieces capable of being subsequently machined into shells. The contract provided in terms for inspection of the completed pieces before acceptance and for rejection of all pieces due to faulty workmanship. In the clause of the contract relating to inspection there was a provision providing for doubtful forgings and those rejected for minor defects due to surface conditions. Doubtful forgings — the pieces! around which this controversy centers — were, as their name implies, pieces which might or might not, despite imperfections, have been ultimately machined into shells. If after they were forwarded to the manufacturer of shells they were converted into shells the plaintiff was to receive the contract price therefor; if the *880 attempt failed, the plaintiff was to bear the cost of freight and machine work done thereon.
When the contract was on December 6, 1918, cancelled and work thereon suspended the plaintiff had on hand 10,-703 pieces designated by the inspector as doubtful forgings. In the latter part of December, 1918, or early in January, 1919, the plaintiff sold to the Martin Products Company, of Cleveland, Ohio, 10,300 pieces out of this lot of doubtful forgings and received therefor $3.20 per piece, the plaintiff contemplating at the time to reimburse itself for the cost of forging the pieces, i. e., $1.95 each, and with balance of the funds go into the open market and purchase sufficient steel to replace the full quantity furnished by the Govermnent from which the doubtful forgings had been forged. Steel at this time was selling for $20 per ton, whereas the Government had paid $70 per ton for the steel so furnished.
In order to properly adjust the rights of the plaintiff and the Government under the cancelled contracts, as well as all other contracts similar in character, the War Department organized the Cleveland District Ordnance Board, and to this board the plaintiff presented its claims. On July 19, 1919, at a meeting of the board the plaintiff’s claims were discussed and considered. The plaintiff was represented and its side of the case fully stated. The members of the board entertained the opinion that what the plaintiff did in disposing of the doubtful forgings as above set forth was not only contrary to the terms of the contract but contrary to law, the board finally holding that what was done by the plaintiff amounted to a conversion of Government property and held it responsible to the Government for the full amount of the steel consumed in the doubtful forgings at $70 per ton, thereby denying the plaintiff the right to substitute the steel purchased for that purpose at $20 per ton.
In the discussion incident to this particular item of the settlement the plaintiff alleges that the members of the board coerced it into acquiescing in the terms of the same by the use of language of an intemperate character and *881 positive threats of criminal prosecution if it refused. We have gone carefully into all that was said and done, and are unable to concur in plaintiff’s allegations. The proof does not sustain duress. The negotiations which finally culminated in the settlement contracts were initiated by the parties on July 19, 1919. The pressure exerted, which it is said deprived the plaintiff of its free agency, was put forth at this precise time; but the plaintiff did not sign the settlement contracts until July 29, 1919, ten days after the alleged compulsion, and in the meantime plaintiff had consulted lawyers in Washington with regard to other matters, failing to mention or seek advice from them with reference to a matter involving substantial property rights and freedom of contract. In addition to this, there was room from the terms of the contract for an insistence upon the part of the board that the settlement with respect to this item was just and equitable. The contract obligated the contractor to pay for the steel furnished by the Government which went into forgings rejected for faulty workmanship. The plaintiff by disposing of the forgings rendered it impossible for the Government’s representative to know whether those forgings might eventually have been machined into shells; in fact, the absence of the forgings from the material on hand prevented a consideration of their status in the settlement to be made.
While we entertain no doubt of the complete innocence of the plaintiff in selling the same, there was no contractual authority to do it. The material was furnished by the Government. It was the property of the Government, the plaintiff being obligated to do no more than forge it into suitable pieces for shell manufacture. Hartsville Oil Mill v. United States, 60 C. Cls. 712; Mason v. United States, 17 Wall. 67; American Smelting & Refining Co. v. United States, 259 U. S. 75.
The settlement contracts notwithstanding plaintiff’s then insistence of duress were approved by the Board of Contract Adjustment and finally by the Secretary of War. We believe the plaintiff has failed to establish duress, and are in *882 accord with the findings of the board and the Secretary of War.
Judgment for the United States on its counterclaim for the amount due the United States under the settlement contracts in the sum of $8,338.94 is awarded. It is so ordered.
Graham, Judge; Hat, Judge; Downey, Judge; and Campbell, Chief Justice, concur.