# UNITED STATES v. COMPAGNIE GÉNÉRALE TRANSATLANTIQUE.

Circuit Court of Appeals, Second Circuit.
May 7, 1928.

No. 123.

1. Courts ⬤⇒426—Action to recover fines paid by vessel bringing in aliens subsequently deported held maintainable as founded on "law of Congress" (Immigration Act of 1924, § 16, 8 USCA § 216; Tucker Act, 28 USCA § 41(20).

Action to recover sums imposed as fines by Commissioner of Immigration under Immigration Act of 1924, § 16, 8 USCA § 216, against vessel, for bringing in aliens subsequently excluded and ordered deported, and which was paid under protest, *held* maintainable as an action founded upon a law of Congress within meaning of Tucker Act, 28 USCA § 41(20), authorizing jurisdiction of United States District Court as to claims against United States founded upon any law of Congress.

2. Aliens ⬤⇒58—Evidence held to show that penalties imposed by Secretary of Labor against steamship company transporting aliens, who were excluded, were unauthorized (Immigration Act 1924, § 16, subds. (a) (b), 8 USCA § 216, subds. (a) (b).

Evidence that aliens embarked under circumstances by which shipping company did not know and could not have ascertained by exercise of reasonable diligence that aliens were not entitled to their visas *held* to show that penalties imposed by Secretary of Labor under Immigration Act of 1924, § 16, subds. (a) (b), 8 USCA § 216, subds. (a) (b), against steamship company, when aliens were excluded, were unauthorized.

3. Aliens ⬤⇒58—Decision of Secretary of Labor, refusing to refund fines against vessel bringing in aliens, turning on proper construction of statute, was not final (Immigration Act of 1924, §. 16 [8 USCA § 216]).

Where decision of Secretary of Labor refusing to refund fines imposed against vessel for bringing in aliens subsequently excluded did not involve any disputed question of fact, and turned exclusively on proper construction of Immigration Act of 1924, § 16 (8 USCA § 216), the decision of the secretary was not final.

In Error to the District Court of the United States for the Southern District of New York.

Action by Compagnie Générale Transatlantique against the United States to recover sums imposed as fines by the Commissioner of Immigration and paid under protest. Judgment for plaintiff (21 F.[2d] 465), and defendant brings error. Affirmed.

Charles H. Tuttle, U. S. Atty., of New York City (Frank Chambers, Asst. U. S. Atty., of New York City, and W. S. Ward, Asst. Atty. Gen., of counsel), for the United States.

Joseph P. Nolan and John M. Lyons, both of New York City (Roger O'Donnell,

of Washington, D. C., of counsel), for defendant in error.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge. The Secretary of Labor fined the defendant in error, a steamship line, because its vessels brought into the United States three aliens who were excluded and ordered deported by the immigration officials.

The first immigrant, Taboada, of Spain, sought admission on December 12, 1924, having in his possession a "nonquota" visa issued by the American vice consul at Vigo, Spain. Section 4(b), Immigration Act 1924 (8 USCA § 204(b). He was returning after a temporary visit abroad. The complaint alleged he was a seaman by occupation and came to the United States to reship to a foreign port, having secured a leave of absence from his ship to visit Europe. His final destination was a Central American port and therefore he may have been considered as a temporary visitor under clause 2, § 3, of the Act of 1924 (8 USCA § 203(2). Subdivision (f), § 2, of the Act of 1924 (8 USCA § 202(f), provides that a visa shall not issue if it be believed that the alien is inadmissible. He was excluded as a quota immigrant. The Department of Labor finally conceded his status as a nonquota immigrant and granted permission to him to ship foreign one way, but he was deported before he could avail himself of such privilege. The Commissioner of Immigration imposed a fine of $1,000 and a refund of passage money under the provisions of section 16 of the Immigration Act of 1924 (8 USCA § 216), which were paid. The ship was notified that it would be granted clearance papers on condition only that the amount of the fine and passage be deposited with the collector of the customs in accordance with the provisions of section 16. At the time of his embarkation at the foreign port, the inadmissibility of this alien was unknown to the appellee.

The second immigrant, Bengoa, who had a "nonquota" visa issued by the American consul at Balboa, Spain, was returning to the United States after a temporary visit abroad, when he applied for admission in May, 1925. He, too, was a seaman by occupation, and was returning, intending to pursue that calling, which had been interrupted by a seamen's strike. He intended to reship, but was excluded as a quota immigrant. The privilege of signing on foreign one way, which in effect recognized his nonimmigrant status, was given him, but he was deported before he could avail himself of this privilege. A like fine and the amount of the passage money was imposed under section 16 and paid under protest.

The third immigrant embarked, as coming from Lucerne, Switzerland, with a nonimmigrant visa issued by the American consul there, it being stated that he was a temporary visitor and that his purpose was to visit his father in Colorado. He had a return ticket and cash when he reached New York, but was excluded as a quota immigrant. The steamship was justified, under the circumstances, in accepting him as a passenger intending a temporary visit here. The Commissioner of Immigration imposed a fine in a like sum and the amount of the passage money, which was paid.

The recovery sought is based upon the provisions of section 24 of the Judicial Code (28 USCA § 41), which grants to the District Court jurisdiction "concurrent with the Court of Claims, of all claims not exceeding ten thousand dollars founded upon the Constitution of the United States or any law of Congress, or upon any regulation of an Executive Department, or upon any contract, express or implied, with the government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect to which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable, and of all set-offs, counterclaims, claims for damages. * * * *"

Section 16, subds. (a) and (b) of the Immigration Act of 1924 (8 USCA § 216 (a), (b), gave authority to the Secretary of Labor to impose a fine of $1,000 for each immigrant brought in by a steamship company in addition to a sum equal to that paid by the immigrant for his transportation, where the immigrant is excluded because he does not have an unexpired immigration visa or where a quota immigrant has an immigration visa, which specifies him as a nonquota immigrant. And subdivision (c) of the same section (8 USCA § 216 (c) provides that "such sums shall not be remitted or refunded, unless it appears to the satisfaction of the Secretary of Labor that such person, and the owner, master, agent, charterer, and consignee of the vessel, prior to the departure of the vessel from the last port outside the United States, did not know, and could not have ascertain-

ed by the exercise of reasonable diligence, (1) that the individual transported was an immigrant, if the fine was imposed for bringing an immigrant without an unexpired immigration visa, or (2) that the individual transported was a quota immigrant, if the fine was imposed for bringing a quota immigrant the visa in whose immigration visa specified him as being a nonquota immigrant."

And section 26 of the act amends section 9 of the Immigration Act of 1917 (8 USCA § 145), and excepts from the penalty of this fine transportation companies who bring in aliens who are by any of the provisions of the exceptions of section 3 of the Act (8 USCA § 203) exempt from the excluding provisions of the section. Among others, section 3 permits immigrants to enter who are visiting the United States temporarily for business or pleasure, and section 4 (8 USCA § 204) exempts aliens who are returning from a temporary visit abroad, and seamen also come within the exceptions.

[1, 2] The plaintiff in error argues that the claims are not founded upon a law of Congress, and that, therefore, this action may not be maintained under the Tucker Act (section 24, Judicial Code (28 USCA § 41 (20). The judgment below was granted because the fines were improperly or arbitrarily retained when, under section 16(c) of the act of 1924, the Secretary of Labor should have refunded the sums paid, for the reason that each alien embarked under circumstances by which the defendant in error did not know, and could not have ascertained by the exercise of reasonable diligence, that the aliens were not entitled to their visas. Indeed, it is questioned if, in fact, the Secretary of Labor believed that the defendant in error could not have ascertained the facts as to their right to apply for admission to this country, but still refused to refund under section 16. Therefore the right of recovery is based upon a law of Congress. United States v. Laughlin, 249 U. S. 440, 39 S. Ct. 340, 63 L. Ed. 696. It was the duty of the Secretary of Labor to refund the penalties if they were improperly imposed. That they were wrongly imposed is established. The statute (section 16(c) provides for the Secretary of Labor passing upon the knowledge or the exercise of reasonable diligence on the part of the defendant in error in relation to the immigrant and his visa. Arbitrary action, in acting or refusing to act, would not defeat the defendant in error's claim to a refund.

Keeping the fine without conforming to section 16—that is, without fairly passing on the issue presented to him—would be arbitrary, and such action by the Secretary is pleaded, and, for the purpose of the motion to dismiss, is admitted.

The defendant in error assented to the deposit or payment, but under protest, and its receipt by the collector was in no way tortious. There is no claim of misfeasance in office and no right of claim is based thereon. No act or omission caused harm which the person so acting or omitting did not intend to cause, or which might with due diligence have been foreseen and prevented. When a claimant has the right to have the amount paid as a fine, under the statute subsequently declared unconstitutional, refunded to him, his claim does not sound in tort, but rather is a quasi contractual obligation by the government to pay the illegally imposed fine, and such is based upon a law of Congress. Sultzbach Clothing Co. v. United States (D. C.) 10 F.(2d) 363. An illegal assessment of a special tax is recoverable against the government, where there is no statutory remedy provided for the enforcement of the payment, and the general laws of the Court of Claims may be resorted to for relief; this upon the principle that a liability enacted by statute, without a remedy, may be enforced by such a common-law action. United States v. Kaufman, 96 U. S. 567, 24 L. Ed. 792.

In Dooley v. United States, 182 U. S. 222, 21 S. Ct. 762, 45 L. Ed. 1074, a suit was brought for money and property exacted by the collector of customs for alleged customs duties. The jurisdiction of the court to hear the case was brought into question, and it was claimed that it was based upon a tort and not upon a contract. The court held otherwise, saying that the act contemplated recovery in the following classes: (1) Those founded upon the Constitution or any law of Congress, with the exception of pension cases; (2) cases founded upon a regulation of an executive department; (3) cases of contract, expressed or implied, with the government; and (4) actions for damages, liquidated or unliquidated, in cases not sounding in tort. And "the words 'not sounding in tort' are in terms referable only to the fourth class of cases."

United States v. Holland-American Lijn, 254 U. S. 148, 41 S. Ct. 72, 65 L. Ed. 193, differs from this case, for there the immigration officials, acting wholly without law to authorize their acts, required the steamship company to pay certain maintenance charges for detained aliens. The payments were

made under protest and formed the basis of the action. There government officers' acts were tortious in their nature, and that precluded the steamship company from recovery. But here the right of recovery is based upon the obligations imposed under section 16 upon the Secretary of Labor, and the defendant in error seeks to recover because of the arbitrary action in his failure to act upon the evidence which justified his refunding the fines. The Tucker Act is more than a mere procedural statute and it does not limit the right of recovery to cases where the government has consented to the creation of an obligation; that is, where assent is lacking, there is no obligation upon the United States and no recovery possible.

In United States v. Laughlin, 249 U. S. 440, 39 S. Ct. 340, 63 L. Ed. 696, it was pointed out, where recovery was sought for over-payment in connection with a pre-emption entry on certain public lands, where the act provided that "in all cases where it shall appear to the satisfaction of the Secretary of the Interior that any person has heretofore or shall hereafter make any payments to the United States under the public land laws in excess of the amount he was lawfully required to pay, * * * such excess shall be repaid to such person, * * *" that the intent of Congress was that the Secretary should have exclusive jurisdiction only to determine disputed questions of fact, and that, as in other administrative matters, his decision upon questions of law was reviewable by the courts. Moreover, it appears here that there were no facts upon which to predicate a fine, for the visas were not improperly issued to each alien, and, as it turned out, the steamship company had exercised reasonable care.

[3] It also appears that at the inception, when the moneys were paid, it was as a deposit pending the determination of liability for the payment of the fine and passage money, and this was done in order to obtain the release of the vessels involved. In Medbury v. United States, 173 U. S. 492, 19 S. Ct. 503, 43 L. Ed. 779, where it was held that the Court of Claims had jurisdiction of an action to recover excess of payment for lands within the limits of a railroad grant, the court said: "We cannot suppose that Congress intended in such case to make the decision of the Secretary final when it was made on undisputed facts. If not, then there is a remedy in the Court of Claims, for none is given in the act which creates the right. The procedure for obtaining the repayment as provided for in the act must be followed,

and when the application is erroneously refused, the party wronged has his remedy, but that remedy is not furnished by the same statute which gives him the right." And again: "If there were any disputed questions of fact before the Secretary his decision in regard to those matters would probably be conclusive, and would not be reviewed in any court. But where, as in this case, there is no disputed question of fact, and the decision turns exclusively upon the proper construction of the act of Congress, the decision of the Secretary refusing to make the payment is not final, and the Court of Claims has jurisdiction of such a case."

It thus appears that the court below had jurisdiction, and that the claim for which recovery is sought is based upon a law of Congress, and in view of what we have said the judgment below was properly entered.

Judgment affirmed.