## CLYDE S. S. CO. v. UNITED STATES.

District Court, S. D. New York. March 29, 1929.

Burlingham, Veeder, Fearey, Clark & Hupper, and E. Underwood, Jr., all of New York City, for plaintiff.

Charles H. Tuttle and E. Lappano, both of New York City, for the United States.

BONDY, District Judge. This suit was brought to recover fines imposed upon plaintiff for bringing into the country four immigrants without unexpired immigration visas.

The Immigration Act of 1924, 8 U. S. C. § 216 (8 USCA § 216), makes it unlawful for any transportation company to bring to the United States by water from any place outside thereof any immigrant who does not have an unexpired immigration visa.

It provides that such company shall pay the sum of $1,000 for each immigrant so brought and a sum equal to that paid by such immigrant as transportation, and that such sum shall not be remitted or refunded, unless it appears to the satisfaction of the Secretary of Labor that such company or its representatives did not know, or could not have ascertained by the exercise of reasonable diligence, that the individual transported was an immigrant.

It (8 U. S. C. § 203; 8 USCA § 203) expressly excepts from the meaning of the term "immigrant," when used in the act, an alien visiting the United States temporarily as a tourist or temporarily for business or pleasure.

The act (section 204) expressly includes in the term "nonquota immigrant" an immigrant who was born in the Dominican Republic.

January 12, 1925, the President of the United States proclaimed that citizens of the Dominican Republic, who are visitors, may enter the United States temporarily without documents of any kind.

Immigration rules define a visitor as one who comes for a period not exceeding six months.

The plaintiff brought the aliens, who were natives and citizens of the Dominican Republic, to the United States. None of them was in possession of an unexpired immigration visa, but the plaintiff obtained from each alien before sailing an affidavit stating that he intended to go to the United States temporarily, for recreation or pleasure.

At a hearing accorded the aliens before a board of special inquiry, it developed that one of the aliens who came to visit his sister had $5, another who came to visit his cousin had $74, and another who came to visit his brother did not have any money in his possession, and that the American consul had told them that they did not need visas because they did not intend to remain here. The other who came to visit a friend had $50 in his possession. All testified that they came temporarily and intended to return within three months. The affidavits delivered by them to the plaintiff before their embarkation were attached to the transcript of the proceedings before the board, and their contents therefore undoubtedly were known to the board.

After the hearing their deportation was ordered on the ground that each alien was an immigrant not in possession of an unexpired immigration visa and the Commissioner of Immigration notified plaintiff that it appears that fines should be imposed against it for bringing immigrants without unexpired visas, and allowing sixty days for a hearing as to whether a fine should be imposed.

Thereupon the plaintiff wrote to the Secretary of Labor requesting the remission of the fines, but the request was denied. Thereafter plaintiff, to clear its ship, deposited the amount of the fines and passage money with the collector, who paid it into the Treasury of the United States.

The President having proclaimed that citizens of the Dominican Republic who are visitors may enter the United States temporarily without documents of any kind, and the plaintiff, notwithstanding that fact, having obtained affidavits before transporting the aliens, in which they stated that they intended to go to the United States temporarily for recreation and pleasure, and the good faith of the plaintiff not having been questioned, and an alien's right to enter the United States as a temporary visitor not being dependent upon the amount of money he possesses, it appears that the company did not know, and could not have ascertained by the exercise of reasonable diligence, that the individuals transported were immigrants and not visitors.

As was said in Compagnie Française de Navigation a Vapeur v. Elting (C. C. A.) 19 F.(2d) 773, 774: "The plaintiff could not have known at the port of embarkation that the alien was inadmissible, for this fact could be established only after a hearing by immigration officials. Diligent inquiry would have disclosed merely the facts which the alien submitted at his hearing, and the sufficiency of those facts had to be passed upon by the immigration officials at such hearing before the alien's admissibility could be ascertained." And: "To hold that the transportation company acts at its peril in bringing an alien who claims to be exempt from the quota would be a practical denial to the alien of the privilege of presenting his evidence. No company would bring him on such terms. To hold that the company must investigate the merits of the alien's claim, and is privileged to bring only such aliens as

it thinks ought to be admitted, is to make it, rather than the immigration officials, pass upon the alien's claim, which is not the privilege granted the alien by the regulation."

In that case, like in this, as stated at page 773: "The Secretary of Labor notified the plaintiff of its liability to a fine, and declined to remit the same. The fine was paid under protest to the defendant, in October, 1923, and this suit was forthwith instituted to recover it."

There apparently was no application for a refund after the fine was paid nor any appeal after payment to the Secretary of Labor.

The court said (page 774): "It can scarcely be supposed that Congress intended to penalize a vessel owner for transporting an alien privileged to come for such purpose. The purpose is not to be imputed, in the absence of plain language, to penalize an act innocent of intentional wrong. Cunard S. S. Co. v. Stranahan (C. C.) 134 F. 318. We think the statute did not authorize the imposition of the penalty under the circumstances presented by this record. Having been paid under duress, it is recoverable. W. & C. T. Jones S. S. Corp. v. Hamilton (D. C.) 255 F. 799."

In United States v. Compagnie Générale Transatlantique (C. C. A.) 26 F.(2d) 195, 197, the court said: "It was the duty of the Secretary of Labor to refund the penalties if they were improperly imposed," and: "Arbitrary action, in the acting or refusing to act, would not defeat the defendant in error's claim to a refund. Keeping the fine without conforming to Section 16—that is, without fairly passing on the issue presented to him —would be arbitrary, and such action by the Secretary is pleaded, and, for the purpose of the motion to dismiss, is admitted."

Whether or not the department officials were correct in holding the aliens to be immigrants and not visitors, the fines were arbitrarily imposed, and are being arbitrarily retained by the Secretary of Labor. The aliens embarked under circumstances under which the petitioner did not know, and could not have ascertained by the exercise of reasonable diligence, that they were not entitled to admission to the United States. The penalties therefore should be refunded. U. S. v. Compagnie Générale Transatlantique (C. C. A.) 26 F.(2d) 195.

This court has jurisdiction over the cause of action. Compagnie Générale Transatlantique v. United States, supra.

Plaintiff accordingly is entitled to the judgment prayed for.