### BERMUDA & WEST INDIES S. S. CO., Limited, v. ELTING, Collector of Customs.

District Court, S. D. New York.
July 31, 1930.

Kirlin, Campbell, Hickox, Keating & Mc-Grann, of New York City, for plaintiff.

Charles H. Tuttle, U. S. Atty., of New York City (John Rosenberg, of New York City, of counsel), for defendant.

COXE, District Judge.

This action presents the question whether the government was justified in imposing fines and directing passage money refunds for bringing to this country nine immigrants, who were subsequently excluded after examination at Ellis Island. The suit is properly brought against the collector. Cosulich v. Elting (C. C. A.) 40 F.(2d) 220. It is urged, however, that the determination of the Secretary in imposing the fines and directing the refunds was final and not subject to review. But it has been held repeatedly that "arbitrary action, in acting or refusing to act, would not defeat the * * * claim to a refund," and that "keeping the fine * * * without fairly passing on the issue presented to him—would be arbitrary." U. S. v. Compagnie (C. C. A.) 26 F.(2d) 195, 197; Clyde v. U. S. (D. C.) 33 F.(2d) 343; Svenska Amerika Linien v. Elting, 46 F.(2d) 178, opinion of Judge Thacher, May 15, 1929.

The government criticizes also the character and form of the proof submitted to the Secretary on the application for remission. This proof was accepted, however, without objection, and it is not open to the government now to insist that it was so informal that it should have been disregarded. It has never been the rule that strict formal proof was required in proceedings of this kind, and I can see no good reason for departing from that practice at this time.

In three of the cases presented, namely, Howe, Blondell and Aliexo, the immigrant was in possession of a nonquota visa, but was excluded after examination before the Board of Special Inquiry because found not to be entitled to nonquota classification. In these cases, the mere possession of the visa demonstrated the good faith of the steamship company. Compagnie v. Elting (C. C. A.) 19 F.(2d) 773. And neglect of the steamship company can hardly be predicated on a failure to discover facts which the American consul himself was unable to develop when he issued the visa. Spanish Royal Mail Line Agency v. U. S. (D. C.) 45 F.(2d) 404, opinion of Judge Thacher April 10, 1928. The steamship company was not content to rest solely on the visa, but made independent investigations in the three cases without finding anything to impugn the action of the consul. The only proper place to determine the correct facts with respect to these three immigrants was at New York. Compagnie v. Elting (C. C. A.) 19 F.(2d) 773. I think, therefore, that the steamship company has substantiated its claim, under section 16 of the 1924 act (8 USCA § 216), to remission or refund with respect to them.

In the Wilson, Every, Zilinski, and Hughes cases, there were no nonquota visas, but each immigrant claimed nonquota status, and the steamship company after investigation accepted the different immigrants as entitled to that classification. Wilson and Every submitted, when booking passage, proof to support their respective contentions that they had been previously lawfully admitted to the United States and were returning from temporary visits abroad. They also insisted that under the provisions of Executive Order 4027, nonquota visas were not required in their cases, as they were "aliens who have previously been admitted legally into the United States, have departed therefrom, and have returned within six months." I think the proof submitted by these two immigrants was sufficient to exonerate the steamship company under section 16 of the 1924 act. There was nothing to indicate that they had not been previously lawfully admitted to the United States, and I am satisfied that the steamship company exercised reasonable diligence to ascertain the true facts. The proper place to determine these facts was at New York. Compagnie v. Elting (C. C. A.) 19 F.(2d) 773.

With respect to Zilinski and Hughes, the showing made by the steamship company is not satisfactory. Zilinski stated when he booked passage that he was a naturalized citizen. He produced to support this contention, certificates of declaration of intention

to become a citizen, one dated March 27, 1905, and the other May 3, 1926. He also produced a money order receipt, indicating the payment to the Collector at New York of a head tax of $8. Before the Board of Special Inquiry, he testified that he first came to the United States in June, 1903, and was here intermittently until 1912, and then continuously until 1927, when he left for Demerara on a diamond hunting expedition. The steamship company listed him on the manifest as a naturalized citizen. There was, however, nothing which warranted the steamship company in concluding that he was a citizen. Clearly the certificates of declaration of intention fell far short of such proof; and the mere fact that these certificates were offered in support of his contention was sufficient in itself to create a suspicion that there were no final papers. The fact of citizenship was susceptible of definite proof at the port of departure, and I think the steamship company could have ascertained by the exercise of reasonable diligence that he was not a citizen of the United States.

■ Hughes is in much the same category as Zilinski. He was thirteen years old at the time of embarkation, had never been in the United States, and was coming here to join his father, who was a naturalized citizen. The steamship company was furnished with the naturalization papers of the father, showing that the younger Hughes was his son. I do not think, however, this was sufficient, as the younger Hughes was not a citizen by virtue of his father's naturalization, inasmuch as he never began "to reside permanently in the United States" (USCA, title 8, § 8; U. S. ex rel. Patton v. Tod, 292 Fed. 243), and the steamship company, by the exercise of reasonable diligence, could readily have ascertained that fact.

■ Miss Currie and Wade were excluded after examination at Ellis Island under section 3 of the 1917 Act (8 USCA § 136) as being unable to read. Miss Currie had previously been regularly admitted to the United States in 1922, and had remained until 1924. She was advised by the American consul in Bermuda that under the provisions of Executive Order 4027, already referred to, no visa was necessary in her case. She was examined by the steamship company prior to booking, and satisfied them of her ability to read and write. On this record, I think the steamship company was justified in bringing Miss Currie to this country without subjecting itself to a fine. Compagnie v. Elting (C. C. A.) 19 F.(2d) 773. Wade held a British passport with a nonquota visa signed by the American vice consul, March 18, 1925. He had previously been in the United States continuously from 1899 to 1923, and had a wife and six children in Boston. When examined by the steamship company as to his ability to read and write, it was found that "words consisting of more than five letters would have to be spelt first and sometimes would be pronounced correctly and other times wrongly," and that he was unable to read the simplest words. The place to determine illiteracy was in New York, and all that the statute required of the steamship company was to exercise reasonable precaution to detect such a disability prior to departure. I think that the steamship company in this case discharged its statutory obligation, and that the Secretary was not warranted under section 9 of the 1917 act, as amended by section 26 of the 1924 act (8 USCA § 145), in imposing a fine and directing the passage money refund with respect to that immigrant.

The plaintiff is entitled to judgment on the causes of action numbered 1 to 7, inclusive; and the causes of action numbered 8 and 9 are dismissed.