## ROSS PACKING CO. v. UNITED STATES.

No. 76.

District Court, E. D. Washington, S. D.

Jan. 20, 1942.

Bonsted & Nichoson, of Yakima, Wash., for plaintiff.

Lyle Keith, U. S. Dist. Atty., and Harvey Erickson, Asst. U. S. Dist. Atty., both of Spokane, Wash., for defendant.

SCHWELLENBACH, District Judge.

On March 4, 1939, plaintiff was ordered by the National Labor Relations Board to pay to the United States Treasury certain monies which had been received by one of its employees, the re-instatement of whom was ordered by the Board, for work performed during the period between his discharge by the plaintiff and his order for re-instatement for the Works Projects Administration in the State of Oregon. The amount which such employee received was settled and determined by the plaintiff and the employee and confirmed by the State Administrator of W. P. A. Thereupon, it was paid. Thereafter, on November 12, 1940, the Supreme Court of the United States determined that such an order by the Labor Board was illegal. Republic Steel Corporation v. National Labor Relations Board, 311 U.S. 7, 61 S.Ct. 77, 78, 85 L.Ed. 6. This action for the return of the sum thus paid was commenced under the so-called Tucker Act of 1887, Title 28 U.S.C.A. § 41, subd.(20). To the complaint defendant has interposed in the alternative a motion to dismiss or for a summary judgment in favor of the defendant. I will consider the two motions jointly.

The decision of the Supreme Court in the case of Republic Steel Corporation v. National Labor Relations Board, supra, was based upon the conclusion that an order such as plaintiff herein complied with was illegal for the reason that such an order required the payment of an unauthorized penalty. Certain excerpts from the opinion by Chief Justice Hughes are pertinent:

"The payments to the Federal, State, County, or other governments concerned are thus conceived as being required for the purpose of redressing, not an injury to the employees, but an injury to the public * * *. So conceived, these required payments are in the nature of penalties imposed by law upon the employer,—the Board acting as the legislative agency in providing that sort of sanction by reason of public interest. * * * The question is, —Has Congress conferred the power upon the Board to impose such requirements.

"We think that the theory advanced by the Board proceeds upon a misconception of the National Labor Relations Act * * *. The Act is essentially remedial. It does not carry a penal program declaring the described unfair labor practices to be crimes. The Act does not prescribe penalties or fines in vindication of public rights or provide indemnity against community losses as distinguished from the protection and compensation of employees. * * *

"We do not think that Congress intended to vest in the Board a virtually unlimited discretion to devise punitive measures, and thus to prescribe penalties or fines which the Board may think would effectuate the policies of the Act."

In support of its motions, defendant makes the following contentions:

■ 1. That the complaint is fatally defective because of the failure to join the discharged employee as a party defendant. Such contention is without foundation. There is no controversy now in which such employee could possibly be interested. The employee cannot benefit or lose by the outcome of this action. The order of the Board created no private right in the employee. National Labor Relations Board v. Hearst, 9 Cir., 102 F.2d 658. Report No. 972, Committee on Labor, House of Representatives, 74th Cong. p. 21.

■ 2. Defendant contends that the payment plaintiff made to the Treasury was the result of a compromise agreement entered into on April 21, 1939, between the plaintiff on the one side and the employees union and two of the employees on the other side. Arguing therefrom, defendant urges the well-established rule that courts will not set aside compromises entered into to effect the settlement of litigation. In support of this position, defendant cites a few of the innumerable cases so holding. Mason v. United States, 84 U.S. 67, 17 Wall. 67, 21 L.Ed. 564; United States v. Child & Co., 79 U.S. 232, 12 Wall. 232, 20 L.Ed. 360; Hord v. United States, Ct.Cl., 59 F.2d 125; Duncan v. United States, D.C., 39 F.Supp. 962. Defendant urges that because the agreement of April 21, 1939, was entitled "Settlement and Compromise Agreement," that I am bound to so construe it. The fact is that this was not a compromise. The giving to it of the name of compromise could not make of it a compromise. The word "compromise" itself contemplates a mutuality of concessions for the purpose of the termination of litigation. In Ballentine's Law Dictionary, we find this definition:

"An agreement or arrangement by which, in consideration of mutual concessions, a controversy, either in court or out of court, has been terminated."

"A compromise is an agreement between two or more persons who, to avoid a law suit, amicably settle their difficulties on such terms as they can agree upon." 15 C.J.S. 711.

This was no compromise within the meaning of the rule. The Labor Board had ordered the plaintiff to "make whole said Mrs. Lillian Ayers and Marvin Howard for any loss of pay they may have suffered by reason of their respective discharges by payment to each a sum of money equal to that which he would normally have earned as wages during the period from the date of discharge to the date of such offer of reinstatement less his net earnings during said period, deducting, however, from the amount otherwise due to each of said employees, monies received by said employee during said period for work performed upon Federal, State, County, municipal or other work relief projects, and pay over the amount, so deducted, to the appropriate fiscal agency of the Federal, State, County, municipal or other government or governments which supplied the funds for such said relief projects." Such order having been issued, the plaintiff sat down with the two employees and the labor union for the purpose of ascertaining and determining the amounts due under such order. As was said in the agreement of April 21, 1939, the parties "settled and determined as of said date the gross amount of third parties earnings during said period in the sum of $253.00 earned by him from the following sources:

| | |
|---|---|
| W.P.A. Salem, Oregon, office.... | $228.00 |
| Private employment earned prior to hearing of the within proceeding | 25.00 |
| Total ..................... | 253.00 |

the amount of said W. P. A. earnings having been this day confirmed by letter of E. J. Griffith, State Administrator, Portland, Oregon."

There was no element of mutual concessions. All that was done was to settle and determine the amounts which plaintiff was compelled to pay if it complied with the Board's order. This situation is not inherently different from one that commonly occurs at the conclusion of a trial. The court decides that judgment will be entered in favor of one party as against the other on the basis of the conclusions he has reached. He then requests the parties, through their respective counsel, to consult and agree among themselves as to the amount of such judgment. No one would seriously contend that because the parties to the lawsuit did consult and did settle and determine the amount, in accordance with the court's ruling, that it was a compromise which barred either side from its right of appeal.

935

3. Defendant contends that, since the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. § 151 et seq., provides that the judicial participation in its processes must commence with the Circuit Court of Appeals, that an action of this kind must necessarily be commenced in the Circuit Court of Appeals. Such contention is without substance. In an action involving the National Labor Relations Act, the original jurisdiction acquired by the Circuit Court of Appeals is exclusively in respect to provisions authorizing it to enforce, modify or set aside orders of the National Labor Relations Board. Donnelly Garment Co. v. International Ladies' Garment Workers' Union, 8 Cir., 99 F.2d 309, certiorari denied 305 U.S. 662, 59 S.Ct. 364, 83 L.Ed. 430. It is true that in that case the question involved was the relationship between the Labor Relations Act, 29 U.S.C.A. § 160, and the Norris-LaGuardia Act, 29 U.S. C.A. §§ 101–115, but the same principle is controlling here. That being true, clearly the Circuit Court of Appeals would have no original jurisdiction to entertain this action.

4. In addition to the foregoing contentions, defendant has cited two cases, a separate discussion of which is necessary here.

In Deppe v. Lufkin, 1 Cir., 116 F.2d 483, the action was to recover fines imposed by the Secretary of Labor under the Immigration Act of 1924, 8 U.S.C.A. § 167(a), for failure of the Steamship Company to detain alien members of its ship's crew who were not bona fide seamen. The statute required the notice to detain such seamen to be served on the owner or agent of the owner. The notice in this case was served on the master. The statute required the notice of liability to be served on the master. In this case, such notice was served on the agent of the owner. Thereafter, a fine was levied which was paid without protest. Six years later, after the time for the rectification of the government's procedural errors had expired, the action was commenced. There was nothing illegal about what the government's agents did. The defect consisted purely of technical, procedural errors. There was nothing in the Tucker Act which would support a recovery.

The case of Hartsville Oil Mill v. United States, 271 U. S. 43, 46 S.Ct. 389, 391, 70 L.Ed. 822, does not involve the Tucker Act. It got before the Court of Claims through the medium of a Senate Resolution authorizing that court to consider the claim involved and report its conclusions concerning it to the Senate. Judicial Code, § 151, 28 U.S.C.A. § 257. The question involved was whether the company could recover on a contract with the Ordnance, Department in view of the fact that the contract on which it sought recovery had been superseded or modified by a later contract. Claimant contended that the later contract was secured by duress or coercion. It alleged such duress consisted of a threat to break the first contract. It failed to prove any probable injury which it would have suffered from the threatened refusal of the Government to carry out the first contract. The holding of the court was that "a threat to break a contract does not in itself constitute duress. * * * there must be evidence of some probable consequences of it to person or property for which the remedy afforded by the courts is inadequate." I can see nothing in that case which is of assistance here.

The problem in this case is to determine whether plaintiff is entitled to make use of the Tucker Act to recover money paid by it by virtue of the order of the Labor Board, which order was later declared by the Supreme Court to be illegal. It must be understood that the purpose of the Tucker Act was to give to the District Courts the power to hear cases against the Government involving sums not to exceed $10,000, the jurisdiction to hear which had previously been vested in the Court of Claims. On numerous occasions, the Supreme Court has quoted with approval the following breakdown of the Tucker Act written by Mr. Justice Brown in Dooley v. United States, 182 U.S. 222, 21 S.Ct. 762, 763, 45 L.Ed. 1074:

"The 1st section evidently contemplates four distinct classes of cases:

"(1) Those founded upon the Constitution or any law of Congress with an exception of pension cases; (2) cases founded upon a regulation of an executive department; (3) cases of contract, express or implied, with the government; (4) actions for damages, liquidated or unliquidated, in cases not sounding in tort. The words 'not sounding in tort' are in terms referable only to the fourth class of cases."

In this action plaintiff relies exclusively on that portion of subdivision 1 reading:

936

"Those founded upon the Constitution or any law of Congress."

Using this break-down or classification, the inapplicability of the two remaining cases cited by defendant is readily seen.

The case of Baltimore Mail S. S. Co. v. United States, 4 Cir., 76 F.2d 582, 585, was presented to the court which heard it on the basis of subdivision 3. It was considered as an action on an implied contract. Recovery was denied on the ground that the only contract which might be implied in that case was one implied in law. In the decision, the point in the discussion concerned the distinction between contracts implied in fact and those implied in law. The nub of the decision is found in the following language: "Many cases construing the Tucker Act support our conclusion that a suit based on a contract implied in law is not maintainable against the United States by reason of the Tucker Act itself."

The case of United States v. Gettinger, 272 U.S. 734, 47 S.Ct. 276, 277, 71 L.Ed. 499, is also a case considered under subdivision 3 of the Tucker Act. There a fine was paid under a plea of nolo contendere to an indictment. Later the statute on which the indictment was based was declared unconstitutional. The action was brought for the return of the money paid on the fine. In a brief opinion by Mr. Justice McReynolds, recovery is denied on the ground that " * * * no contract arose out of it which obligated the United States to return the fine. Neither the court nor any federal officer had authority to make such an agreement."

Plaintiff rests its case exclusively on Carriso, Inc., v. United States, 9 Cir., 106 F.2d 707, 712, and the cases there cited. In that case, action is brought to recover money paid to the United States for surveyors' fees exacted from plaintiff under Section 4186 of the Revised Statutes. That section was expressly repealed by Section 1 of the Act of March 3, 1933, c. 202, 47 Stat. 1431. The services for which the fees were exacted were performed after that date. The action was brought there, as here, under the Tucker Act. The Government's demurrer (erroneously entitled "motion to dismiss" since it was interposed prior to the effective date of the Federal Rules of Civil Procedure) was sustained and the complaint dismissed. This action was reversed by the appellate court.

In the Carriso case, the Government's position was that the action sounded in tort and that, therefore, there was no jurisdiction under the Tucker Act. This was rejected by the court in the following language:

"This contention, which the District Court upheld, must be rejected. It appears from the complaint that the surveyors' fees in question were exacted of appellant under and pursuant to § 4186 of the Revised Statutes and were, in fact, the fees therein prescribed. Appellant's claim is that the fees were exacted, not tortiously, but illegally, in that they were exacted after § 4186 had been repealed.

"Thus, in effect, appellant claims that the Collector misconstrued and misapplied § 4186, that is to say, construed it as remaining in effect after it had been repealed, and so applied it to appellant; and that, therefore, the fees should be refunded. Such a claim does not sound in tort. It is a claim founded upon a law of Congress, within the meaning of § 24(20) of the Judicial Code, 28 U.S.C.A. § 41(20). Compare Dooley v. United States, 182 U.S. 222, 223–228, 21 S.Ct. 762, 45 L.Ed. 1074; United States v. Hvoslef, 237 U.S. 1, 7–10, 35 S.Ct. 459, 59 L.Ed. 813, Ann.Cas.1916A, 286; United States v. Emery, Bird, Thayer Realty Co., 237 U.S. 28, 30–32, 35 S.Ct. 499, 59 L.Ed. 825; Christie-Street Commission Co. v. United States, 8 Cir., 136 F. 326, 327–331; Compagnie Generale Transatlantique v. United States, D.C., 21 F.2d 465, 466, affirmed in United States v. Compagnie Generale Transatlantique, 2 Cir., 26 F.2d 195."

There can be no doubt as to the similarity between the Carriso case and this one. In each the Government received money to which it was not entitled. There, the official misconstrued the law by construing it to be in effect after it had been repealed. Here, the Board misconstrued the law by construing that it had power to inflict a penalty on the plaintiff. In neither case was there any compulsion brought upon the plaintiff to make payment except the necessity of complying with an order of a legally constituted government official or agency. In each case the act of the government's agents was illegal. Clearly, if the acts of the Collector in the Carriso case were not tortious, then the action of the Board here was not tortious. There can be no essential difference between an act

which is unauthorized because the power to do it has been repealed and one which is unauthorized because such power was not given by the law in the first place.

There is one difference in the facts of the two cases. In the Carriso case, there is a statute, 18 U.S.C.A. § 643, which makes specific provision for the refunding of exactions illegally imposed by the Collector of Customs. Authority therefor is given to the Secretary of the Treasury. There is no provision in the National Labor Relations Act for such refunding. Nor is there any general statute which is available for that purpose. The basic question in this case is whether the absence of such a provision or statute should prevent plaintiff's recovery under the Tucker Act. The answer to that question must come from determining what is meant by the words "founded upon * * * any law of Congress." Do they refer to the substantive portion of the laws, the misconstruction of which resulted in the illegal exaction? Or do they mean that, in addition to that, there must be either a provision in the same law or a provision in some general law showing congressional intent that there should be a refunding of the illegal exaction?

Of the five cases cited in the Carriso decision, two show no indication that the court saw any need for a remedial statute on which to base its conclusion that the Tucker Act was available. In Dooley v. United States, supra, the action was to recover duties illegally exacted upon imports into Porto Rico after the signing of the treaty of peace. There was nothing to indicate the consideration of any refunding statute. Likewise, in United States v. Emery, Bird, Thayer Realty Co., supra, there was no provision for a refund. In that opinion, the following language by Justice Holmes is of interest [237 U.S. 28, 35 S.Ct. 500, 59 L.Ed. 825]: "However gradually the result may have been approached in the earlier cases, it now has become accepted law that claims like the present are 'founded upon' the revenue law. The argument that there is a distinction between claims 'arising under' (Judicial Code, § 24, First) and those 'founded upon' (id. § 24, Twentieth) a law of the United States rests on the inadmissible premise that the great act of justice embodied in the jurisdiction of the court of claims is to be construed strictly and read with an adverse eye."

The other three cases, United States v. Hvoslef, supra; United States v. Compagnie Generale Transatlantique, supra; and Christie-Street Commission Co. v. United States, supra, all refer to provisions for the refunding of sums illegally collected. In the Compagnie Generale Transatlantique case there is definite indication that it is upon this statute that the court rested its conclusion that the action was founded on a law of Congress.

The Christie-Street Commission Company decision, however, definitely supports the opposite view. In that opinion, Judge Sanborn points out specifically that the authorities submitted by the Government, as they do in the case here, "fail to consider the real question in this case—whether such claims are of the first class * * * claims founded on the Constitution or upon a law of Congress—and are devoted exclusively to the discussion of the issue whether or not they fall within the third class, in the class of claims founded upon any contract, express or implied, with the government." [136 F. 329.] Further in the opinion, this precise statement is made: "The demurrer in the case at bar admits that the taxes which are the subject of this action were illegally exacted from the plaintiff by virtue of the war revenue law of 1898, misconstrued by the collector of internal revenue. The claim to recover back these taxes was therefore founded upon, and its validity is conditioned by, that law."

Any doubt I may have upon this question is foreclosed in the Ninth Circuit by the manner in which the provision of the revenue act providing for refunds is disposed of in the Carriso decision. In that case, the Government urged that the refunding statute afforded an exclusive remedy. The court answered the argument by saying, "It does not follow, however, that this was appellant's only remedy. Long before the *administrative* remedy was provided, Congress had, by § 1 of the Act of February 24, 1855, c. 122, 10 Stat. 612, now embodied in § 145 (1) of the Judicial Code, 28 U.S.C.A. § 250 (1), provided a *judicial* remedy in such cases. That remedy was by suit or action in the Court of Claims, which had, and still has, jurisdiction to hear and determine claims such as appellant's. That jurisdiction was not impaired or in anywise affected by § 26 of the Act of June 26, 1884, supra. By § 2 of the Act of March 3, 1887, c. 359, 24 Stat. 505, now embodied in § 24 (20) of the Judicial Code, 28 U.S.

938

C.A. § 41 (20), supra, concurrent jurisdiction of claims such as appellant's was vested in the district courts."

Since the court thus clearly indicated that it was not considering the refunding statute as the Act of Congress upon which the appellant's cause of action was founded, it logically follows that it must have accepted the repealed statute as the basis of appellant's claim. That being true, the decision in the Carriso case is controlling here and defendant's motions must be denied.