## UNITED STATES *v.* LAUGHLIN.

### APPEAL FROM THE COURT OF CLAIMS.

No. 200. Argued January 30, 31, 1919.—Decided April 14, 1919.

The Act of March 26, 1908, c. 102, 35 Stat. 48, providing for repayment in all cases where it shall appear to the satisfaction of the Secretary of the Interior that excessive payments have been made to the United States under the public land laws, gives the Secretary exclusive jurisdiction to determine questions of fact; but when the undisputed facts, shown to his satisfaction, call for repayment as a matter of law, his adverse decision is reviewable by the courts and may be reviewed by an action brought by the claimant under Jud. Code, § 145, in the Court of Claims. P. 442.

Under the Northern Pacific land grant Act of July 2, 1864, c. 217, 13 Stat. 365, the filing of a map of general route, although followed by a withdrawal order, did not take the odd sections out of the public domain or exempt them from entry under the preëmption and homestead laws prior to the filing and acceptance of the map of definite location. P. 444. *Nelson* v. *Northern Pacific Ry. Co.,* 188 U. S. 108.

The Act of 1864, *supra,* fixed no special price for odd-numbered sections within the limits of the Northern Pacific grant, and the right of a qualified person to preëmpt such a section prior to the acceptance of the railway's map of definite location at the minimum price of $1.25 per acre (Rev. Stats., §§ 2357, 2259), was a substantial right of which he could not be arbitrarily deprived by government officials. P. 446.

Revised Stats., § 2364, providing that the Commissioner of the General Land Office shall fix a price of not less than $1.25 per acre for

the lands of any reservation when brought into market, has no application to withdrawn odd sections within the Northern Pacific grant limits, when preëmpted before definite location of the railroad. P. 447.

The Act of June 22, 1874, c. 400, 18 Stat. 194, confers no authority upon officials of the United States to charge more for land relinquished by the Northern Pacific Company than otherwise might have been charged. P. 446.

52 Ct. Clms. 292, affirmed.


THE case is stated in the opinion.


*Mr. C. Edward Wright,* with whom *Mr. Huston Thompson* and *Mr. Charles D. Mahaffie* were on the brief, for the United States.


*Mr. F. W. Clements,* with whom *Mr. Wm. R. Andrews* was on the brief, for appellee.


MR. JUSTICE PITNEY delivered the opinion of the court.


This case, although involving but two hundred dollars, is deemed by the Government to be important because typical of a large group of cases of like character. Suit was brought by Laughlin in the Court of Claims under § 2 of the Act of March 26, 1908, c. 102, 35 Stat. 48, for the repayment of an alleged excess charge exacted of him when he made a preëmption cash entry November 20, 1878, for a tract of 160 acres of public land, part of Section 33, Township 5 South, Range 12 East, W. M., in the Dalles, Oregon, land district, for which he was charged by the proper officer of the United States the sum of $400, or at the rate of $2.50 per acre. There was a judgment in favor of the claimant (52 Ct. Clms. 292), and the present appeal followed.

The land is a part of an odd-numbered section within 40 miles of the general route of the Northern Pacific Railroad

Company, as shown by its map filed in the Interior Department August 13, 1870, upon the basis of which the Department, on February 14, 1872, issued an order withholding from disposition the odd-numbered sections of public lands and increasing in price to $2.50 per acre the even-numbered sections within the limits indicated by the map. No map of definite location of this particular portion of the proposed railroad was ever filed; this portion never was constructed, and the grant as to it was forfeited by Act of Congress of September 29, 1890, c. 1040, 26 Stat. 496. Claimant applied to the Secretary of the Interior under the Act of March 26, 1908, for the refund of $200 of the purchase price, alleging that the lawful price was $1.25 per acre; but the Secretary, on July 22, 1916, although finding the facts to be as above stated, denied the application upon the ground that the questions of law presented had been previously adjudicated by the Land Department adversely to claimant's contention.

Upon the present appeal it first is insisted in behalf of the Government that the Court of Claims had no jurisdiction of the subject-matter. If there was jurisdiction, it arose from the clause of § 145, Judicial Code, which confers upon that court jurisdiction to hear and determine claims founded upon "any law of Congress"—the Act of March 26, 1908, being the law relied on. Section 2 of this act reads as follows: "That in all cases where it shall appear to the satisfaction of the Secretary of the Interior that any person has heretofore or shall hereafter make any payments to the United States under the public land laws in excess of the amount he was lawfully required to pay under such laws, such excess shall be repaid to such person or to his legal representatives." The third section provides machinery for the payment of the amount of the excess when ascertained. It is contended by the Government that a favorable decision by the Secretary is a condition precedent to the right of recovery under

the section quoted; that since the Secretary disallowed the present claim, because not satisfied that an excessive payment under the law had been made, there has been no violation of any right of claimant; and that hence there is not presented a claim founded upon a law. of Congress within the meaning of the term as employed in defining the jurisdiction of the Court of Claims. We cannot accept this construction of § 2 of the Act of 1908. According to it, although facts were made to appear to the entire satisfaction of the Secretary showing that a person had made "payments to the United States under the public land laws in excess of the amount he was lawfully required to pay under such laws," it would rest in the uncontrolled judgment and discretion of the Secretary to deny repayment of the excess because not satisfied that it ought to be repaid, notwithstanding Congress had declared that under the precise state of facts it should be repaid. Under this construction the legislative power would in effect be delegated to the Secretary. In our view it was the intent of Congress that the Secretary should have exclusive jurisdiction only to determine disputed questions of fact, and that, as in other administrative matters, his decision upon questions of law should be reviewable by the courts. In the case before us the facts were not and are not in dispute and were shown to the Secretary's satisfaction; whether, as matter of law, they made a case of excess payment, entitling claimant to repayment under the Act of 1908, was a matter properly within the jurisdiction of the Court of Claims. See *Medbury* v. *United States*, 173 U. S. 492, 497–498; *McLean* v. *United States*, 226 U. S. 374, 378; *United States* v. *Hvoslef*, 237 U. S. 1, 10.

Upon the merits, the question is, what price could a preëmptor lawfully be required to pay for public lands in an odd-numbered section within the primary limits of the Northern Pacific Railroad land grant after the filing

of a map of general route and the making of an order withdrawing the odd-numbered sections from entry; no map of definite location of the line in question having at that time or at any time been filed.

The Company was incorporated by Act of July 2, 1864, c. 217, 13 Stat. 365, by the third section of which there was granted to it "every alternate section of public land, not mineral, designated by odd numbers, . . . [within defined limits] . . . whenever on the line thereof, the United States have full title, not reserved, sold, granted, or otherwise appropriated, and free from preemption, or other claims or rights, at the time the line of said road is definitely fixed, and a plat thereof filed in the office of the commissioner of the general land-office; and whenever, prior to said time, any of said sections or parts of sections shall have been granted, sold, reserved, occupied by homestead settlers, or preëmpted, or otherwise disposed of, other lands shall be selected by said company in lieu thereof, under the direction of the Secretary of the Interior, in alternate sections, and designated by odd numbers, not more than ten miles beyond the limits of said alternate sections." By § 6 it was enacted: "That the President of the United States shall cause the lands to be surveyed for forty miles in width on both sides of the entire line of said road, after the general route shall be fixed, and as fast as may be required by the construction of said railroad; and the odd sections of land hereby granted shall not be liable to sale, or entry, or preëmption before or after they are surveyed, except by said company, as provided in this act. . . . And the reserved alternate sections shall not be sold by the government at a price less than two dollars and fifty cents per acre, when offered for sale."

Notwithstanding certain expressions in *Buttz* v. *Northern Pacific Railroad,* 119 U. S. 55, 71-72, it came to be settled

by a line of more recent cases, ending with *Nelson* v. *Northern Pacific Ry. Co.*, 188 U. S. 108, 116, 119, 121, that the Act of 1864 granted to the railroad company only those alternate odd-numbered sections to which at the time of definite location the United States had valid title and which then were free from preëmption or other claims or rights; that the company acquired no vested interest in any particular section of land until after a definite location and acceptance of its map thereof; and that until then the grant was in the nature of a "float." In that case the right of a homestead settler who went upon unsurveyed land after the filing of a map of general route and after the making and transmission to the proper local land office of a withdrawal order based upon that map, and who, as soon as survey was made developing the fact that his land was within an odd-numbered section, attempted to enter it under the homestead laws in the local land office, his application being rejected solely because of supposed conflict with the grant to the Northern Pacific Railroad, was sustained as against the company upon the ground that the acceptance by the land department of the map of general route and the making of a withdrawal order based upon it did not, in view of the terms of the granting act, segregate the land from the public domain or withdraw it from occupancy in good faith by homestead settlers prior to definite location. In *Northern Pacific R. R. Co.* v. *Sanders*, 166 U. S. 620, it was held upon like reasoning that the title of the railroad company was defeated by an entry upon lands within the primary limits of the grant by persons qualified to purchase them as mineral lands, followed by an application to purchase them as such which was pending at the time of the definite location of the railroad although initiated after the filing of the general route, notwithstanding the fact that the lands were not such as properly were to be regarded as mineral lands.

In short, construing §§ 3 and 6 of the granting act together, the filing of a map of general route, although followed by a withdrawal order, did not take the granted sections out of the public domain or exempt them from entry under the preëmption and homestead laws prior to the filing and acceptance of the map of definite location.

It is said on the part of the Government that this land was restored to entry and the claimant's application for purchase accepted because the railroad company had filed a relinquishment pursuant to the Act of June 22, 1874, c. 400, 18 Stat. 194; at the same time it is insisted that the provisions of that act have no bearing upon the determination of this case because not only had the land office never declared that the company's rights had attached to these lands, but in fact it never had any rights. It is said that under such circumstances the department uniformly has held that the Act of 1874 has no application; the practice of the land office having been to permit relinquishments in cases like the present in order to expedite the perfection of settlement claims, while saving to the railroad companies any rights they might have under the Act of 1874 to be determined upon the final adjustment of the grant. There being no finding that the lands in question had been relinquished by the railroad company under the Act of 1874, we give no weight to its provisions, beyond saying that in any point of view they conferred no authority upon the officials of the Government to charge more for the land relinquished than otherwise might have been charged. It declares that "entries or filings thus relieved from conflict may be perfected into complete title as if such lands had not been granted."

It is clear that the price of lands in odd-numbered sections was not fixed by the granting act of 1864. Section 6 fixed a price of two dollars and fifty cents per acre only for the alternate sections reserved to the United

States—that is, those bearing even numbers. We need not pursue the suggestion of counsel for appellee that there could be no "reserved alternate sections," within the meaning of the price-fixing clause, until ascertainment of the granted sections by the filing and acceptance of a map of definite location; for, in any event, neither § 6 nor the withdrawal order made any provision for the price of land in the odd-numbered sections. In the absence of special provision the minimum price was fixed by § 2357, Rev. Stats., at one dollar and twenty-five cents per acre, and under § 2259 a qualified preëmptor was entitled to purchase at the minimum price. This was a substantial right, of which he could not be deprived by arbitrary action of the officers of the Government.

The Government invokes the provisions of § 2364, derived from an act contemporaneous with the land grant (Act of July 2, 1864, c. 221, 13 Stat. 374), and reading as follows: "Whenever any reservation of public lands is brought into market, the Commissioner of the General Land-Office shall fix a minimum price, not less than one dollar and twenty-five cents per acre, below which such lands shall not be disposed of." It is argued that the withdrawal order of 1872 amounted to a "reservation of public lands" within the meaning of this section, so far as it concerned the odd-numbered sections within the limits, and that the sale of the particular quarter-section to claimant amounted to a "bringing into market" of this part of the reservation, so that the commissioner of the general land office was permitted to fix the minimum at such price as he saw fit not less than $1.25 per acre, and was acting within his authority when he set the price of these lands at $2.50 per acre. But of this it suffices to say, as was pointed out in *Nelson* v. *Northern Pacific Ry. Co., supra,* that under the terms of the granting act here under consideration the withdrawal on general route neither did nor could effectively

reserve any of the odd-numbered sections from homestead or preëmption settlement in advance of the definite location of the line of the railroad; and, as has been stated, there never was a definite location of that part of the road which had been proposed to be built opposite to the land that claimant took up.

The judgment of the Court of Claims must be

*Affirmed.*