## SILBERSCHEIN v. UNITED STATES.

(District Court, E. D. Michigan, S. D. April 25, 1922.)

### No. 6742.

Army and navy ⊜⟶51½, New, vol. 12A Key-No. Series—Findings of fact by Director of Veterans' Bureau not reviewable by courts.

Act Aug. 9, 1921, creating the United States Veterans' Bureau, which transfers to its Director the powers and duties of the Director of the Bureau of War Risk Insurance, and provides in section 2 that the Director, subject to the general direction of the President, shall administer, execute, and enforce the provisions of the act, "and shall decide all questions arising under this act except as otherwise provided herein," con-

fers on such officer exclusive authority to decide all questions arising under the act, in so far as they involve the exercise of executive duties and require the determination of disputed questions of fact, and an action cannot be maintained in the courts to review his findings of fact, if supported by any evidence.

At Law. Action by Sam Silberschein against the United States. On motion to dismiss petition. Motion granted.

Fixel & Fixel, Rowland W. Fixel, and Charles A. Retzlaff, all of Detroit, Mich., for petitioner.

Earl J. Davis, U. S. Atty., of Saginaw, Mich., and F. L. Eaton, Asst. U. S. Atty., of Detroit, Mich. (E. H. Horton, of Washington, D. C., of counsel), for the United States.

TUTTLE, District Judge. This cause is before the court on motion to dismiss a petition seeking to enforce against the United States, in this court sitting as a court of claims under subdivision 20 of section 24 of the Judicial Code (Comp. St. § 991), a claim for compensation based upon the provisions of the War Risk Insurance Act, as amended by the act creating the United States Veterans' Bureau (42 Stat. 147).

The material allegations of the petition, which must be accepted as true for the purposes of the motion to dismiss, are that petitioner enlisted in the United States Army December 9, 1917, and was discharged therefrom February 8, 1918, on account of physical disability and by reason of varicose veins in his legs and thighs; that such discharge recited that disease existed prior to his enlistment, and was not contracted in the line of duty, and that the degree of such disability was one-fourth; that the statements in said discharge to the effect that petitioner had a disease prior to enlistment, and that his disability was not contracted in the line of duty, were untrue; that petitioner before such enlistment, was not suffering from varicose veins or any other disease, but was a strong, healthy, and able-bodied man; that, if he was suffering from a disability before enlistment, such disability was aggravated by his duty in active military service; that on his discharge he was suffering from varicose veins, chronic orchitis, fallen arches, and other ailments, all of which resulted from injury incurred in the line of duty while he was employed in the active military service of the United States; that said disability has prevented him from performing work since his discharge; that on August 26, 1918, he was awarded compensation under the War Risk Insurance Act at the rate of $30 per month from February 9, 1918, to July 15, 1918, on account of his said disability; that thereafter he applied for a reopening of his case, and on February 28, 1921, was advised by the Assistant Director in Charge of the Compensation and Insurance Claims Division of the War Risk Insurance Bureau that an award of compensation was on February 19, 1921, approved in favor of petitioner on a total disability rating operative from July 16, 1918; that on May 14, 1921, petitioner was advised that the aforesaid rating was erroneous and on June 17, 1921, he was rated temporary partial disability of 20 per cent., effective from July 16, 1918, to March 18, 1921, after which date his

service disability was held to be noncompensable; that he received compensation in the amount of $641.93 in full of the sum due under the Bureau's ruling; that he has been hospitalized by the United States government practically all of the time since his aforesaid discharge, and is still being so hospitalized at the United States Marine Hospital; that "the contention of the Veterans' Bureau (the legal successor of the War Risk Insurance Bureau) is that the original award of temporary total disability was erroneous, same having been based on the assumption that the disability for which petitioner was being hospitalized was of service origin, and that said disability is not of service connection and therefore is not compensable," while petitioner avers that "said disability is of service origin and therefore is compensable"; that the aforesaid award was "erroneous," and that petitioner is entitled, under the War Risk Insurance Act, to an award of $80 a month from July 16, 1918, to such time as his disability ceases to be total disability; that the ruling of said Veterans' Bureau, allowing petitioner only 20 per cent. disability, as aforesaid, "constituted a violation of petitioner's rights under said law and deprived petitioner of a right and privilege under said law"; that the United States "has neglected and refused to make any payment or settlement with petitioner other than as stated" in his petition, and has "failed to comply with the provisions of the War Risk Insurance Act, although it has had knowledge of petitioner's rights through the officers and agents in said Veterans' Bureau." Wherefore petitioner demands judgment against the United States in the sum of $10,000.

The motion to dismiss the petition is based, in substance and effect, upon the grounds that the United States has not consented to be sued in this court on such a claim as that involved herein, and that, under section 13 of the War Risk Insurance Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514kk), originally the director of the War Risk Insurance Bureau, and now his legal successor, the director of the United States Veterans' Bureau, is vested with power and authority to decide all questions arising under said act, including the question whether petitioner here is entitled to the compensation claimed by him.

Section 300 of the War Risk Insurance Act, the Act of September 2, 1914, chapter 293, 38 Stat. at Large, 711, as amended by section 10 of the Act of June 25, 1918, 40 Stat. at Large, 609, amended again by section 10a of the Act of December 24, 1919, 41 Stat. at Large, 371, and amended further by section 18 of the Act of August 9, 1921, 42 Stat. at Large, 147, abolishing the Bureau of War Risk Insurance and creating in its stead the Veterans' Bureau, provides as follows:

"For death or disability resulting from personal injury suffered or disease contracted in the line of duty on or after April 6, 1917, or for an aggravation of a disability existing prior to examination, acceptance, and enrollment for service. when such aggravation was suffered and contracted in the line of duty on or after April 6, 1917, by any * * * enlisted man, * * * the United States shall pay to such * * * enlisted man * * * compensation as hereinafter provided; but no compensation shall be paid if the injury, disease, or aggravation has been caused by his own willful misconduct. That for the purposes of this section every such * * * enlisted man * * * shall be held and taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, disorders, or infirmities,

made of record in any manner by proper authorities of the United States at the time of, or prior to, inception of active service, to the extent to which any such defect, disorder, or infirmity was so made of record."

Section 302 of the War Risk Insurance Act as amended by section 11 of the Act of December 24, 1919, just cited, provides a classified schedule of awards payable to an enlisted man for the disability mentioned; the amounts depending upon the nature and extent of his disability and upon the kinship and number of his relatives.

Section 305 of the act, as amended by section 19 of the Act of August 9, 1921, cited, is as follows:

"Upon its own motion or upon application the bureau may at any time review an award, and, in accordance with the facts found upon such review, may end, diminish, or increase the compensation previously awarded, or, if compensation is increased, or, if compensation has been refused, reduced or discontinued, may award compensation in proportion to the degree of disability sustained as of the date such degree of disability began, but not earlier than the date of discharge or resignation."

Section 13 of the act, as originally enacted (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514kk), contained the following provisions:

"That the director, subject to the general direction of the Secretary of the Treasury, shall administer, execute, and enforce the provisions of this act, and for that purpose have full power and authority to make rules and regulations not inconsistent with the provisions of this act, necessary or appropriate to carry out its purposes, and shall decide all questions arising under the act. * * * The director shall adopt reasonable and proper rules to govern the procedure of the divisions and to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits of allowance, allotment, compensation, or insurance provided for in this act, the forms of application of those claiming to be entitled to such benefits, the methods of making investigations and medical examinations, * * * and the manner and form of adjudications and awards."

Section 1 of the Act of August 9, 1921, already cited, amending the War Risk Insurance Act in several respects, provided for the establishment of an independent bureau under the President, to be known as the Veterans' Bureau, the director of which should be appointed by the President, by and with the advice and consent of the Senate. It was therein further provided that the powers and duties of the Director of the Bureau of War Risk Insurance were thereby transferred to the Director of the Veterans' Bureau, subject to the general direction of the President, and the office of the Director of the Bureau of War Risk Insurance was thereby abolished.

Section 2 of the act last mentioned is as follows:

"The director, subject to the general direction of the President, shall administer, execute, and enforce the provisions of this act, and for that purpose shall have full power and authority to make rules and regulations not inconsistent with the provisions of this act, which are necessary or appropriate to carry out its purposes and shall decide all questions arising under this act except as otherwise provided herein."

Section 3 of said act contains the following provision:

"The functions, powers, and duties conferred by existing law upon the Bureau of War Risk Insurance are hereby transferred to and made a part of the Veterans' Bureau."

It is conceded by petitioner, and it is clear, that there is no language in the original War Risk Insurance Act or in any of the acts amendatory thereto granting, in terms, to the petitioner the right to bring the present action in this or in any other court, or expressly conferring jurisdiction upon this or any other court over such an action. Nor is there any section or provision in the act, as so amended, which, for the purposes of this case, at least, modifies or limits the authority vested in the director, by section 2 of the act last cited, to "decide all questions arising under this act except as otherwise provided herein." There is no such exception, so far as the action at bar is concerned.

It is, of course, elementary law that the United States government cannot be sued without its consent. As pointed out in Schillinger v. United States, 155 U. S. 163, 15 Sup. Ct. 85, 39 L. Ed. 108:

"The United States cannot be sued in their courts without their consent, and in granting such consent Congress has an absolute discretion to specify the cases and contingencies in which the liability of the government is submitted to the courts for judicial determination. Beyond the letter of such consent, the courts may not go, no matter how beneficial they may deem or in fact might be their possession of a larger jurisdiction over the liabilities of the government."

In the language of the Supreme Court in Stanley v. Schwalby, 162 U. S. 255, 16 Sup. Ct. 754, 40 L. Ed. 960:

"It is a fundamental principle of public law, affirmed by a long series of decisions of this court. * * * that no suit can be maintained against the United States, or against their property, in any court, without express authority of Congress. * * * Neither the Secretary of War nor the Attorney General, nor any subordinate of either, has been authorized to waive the exemption of the United States from judicial process, or to submit the United States, or their property, to the jurisdiction of the court in a suit brought against their officers."

It is urged by petitioner that this court has jurisdiction to entertain and enforce his claim under the provisions of the Tucker Act (24 Stat. 505), as modified by subdivision 20 of section 24 of the Judicial Code, hereinbefore referred to (Act of March 3, 1911, chapter 231, 36 Stat. at Large, 1093 [Comp. St. § 991]), providing as follows:

"The District Courts shall have original jurisdiction as follows: * * * Twentieth. Concurrent with the Court of Claims, of all claims not exceeding ten thousand dollars founded upon the Constitution of the United States or any law of Congress, or upon any regulation of an executive department, or upon any contract, express or implied, with the government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect to which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable: * * * Provided, however, that nothing in this paragraph shall be construed as giving to either the District Courts or the Court of Claims jurisdiction to hear and determine claims * * * for pensions."

It is, however, insisted by the government that by the express language of the War Risk Insurance Act already quoted the Director of the Veterans' Bureau is clothed with the authority to consider and decide the question whether petitioner is entitled to the compensation sought by him; that under such authority said director has discretion-

ary power; and that the decision of such official is final and binding upon the petitioner and leaves the latter no right to institute or maintain the present action in this court.

It is plain that Congress intended to confer upon the administrative officer mentioned full and exclusive authority to decide all questions arising under the act in so far as they involved the exercise of executive duties and required the determination of disputed questions of fact, and to the extent indicated, to make such decisions final and not reviewable by the courts. United States v. Fisher, 223 U. S. 683, 32 Sup. Ct. 356, 56 L. Ed. 610; Degge v. Hitchcock, 229 U. S. 162, 33 Sup. Ct. 639, 57 L. Ed. 1135; United States v. Laughlin, 249 U. S. 440, 39 Sup. Ct. 340, 63 L. Ed. 696; United States v. Babcock, 250 U. S. 328, 39 Sup. Ct. 464, 63 L. Ed. 1011.

It is equally plain that Congress did not intend to permit this executive official to make decisions without any proofs to support the findings of facts necessary to such a decision. From such a finding or decision an aggrieved party has the right to obtain appropriate relief, in a proper proceeding, in court. Medbury v. United States, 173 U. S. 492, 19 Sup. Ct. 503, 43 L. Ed. 779; Interstate Commerce Commission v. Louisville & Nashville Railroad Co., 227 U. S. 88, 33 Sup. Ct. 185, 57 L. Ed. 431; United States v. Laughlin, supra; United States v. Babcock, supra.

Tested by the foregoing principles this petition is fatally defective. It must affirmatively and sufficiently show the existence of those facts necessary for jurisdiction and the right to the relief prayed. There is a total absence of any allegation, as well as of any showing of facts from which an allegation could be inferred, that the decision complained of was unsupported by any facts. Petitioner does not aver that the decision of the bureau is contrary to the undisputed facts or against the weight of the evidence, nor does he allege that the facts involved are undisputed. He does not claim that such decision was based upon or involved a construction of any statutory provision or other question of law. Nor does he allege that the bureau or any other officer of the United States has acted arbitrarily or unfairly or in abuse of any discretion conferred by law.

The extent to which petitioner in his petition has gone in the direction referred to, beyond the bare statement that "the award to your petitioner was erroneous * * * and deprived petitioner of a right and privilege under said law, * * * and that said United States of America, through the Veterans' Bureau, has failed to comply with the provisions of the War Risk Insurance Act" (statements of legal conclusion alone), is merely the allegation that the bureau contends "that the original award of temporary total disability was erroneous, the same having been based on the assumption that the disability for which petitioner was being hospitalized was of service origin, and that said disability is not of service connection and therefore not compensable," while petitioner "avers that said disability is of service origin and therefore is compensable." This falls far short of being an allegation of facts sufficient to constitute a claim that the executive official vested by the statute with power to "decide all questions arising under this

act" has exceeded such power. It will be noted that petitioner does not aver that the bureau or its director contends that his disability was caused or aggravated by injury suffered or disease contracted prior to his examination, acceptance, and enrollment for service. Therefore petitioner is not in position to invoke, or claim any benefit from, the provision of section 300 of the War Risk Insurance Act, as amended, to the effect that—

"Every such * * * enlisted man * * * shall be held and taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, disorders, or infirmities, made of record in any manner by proper authorities of the United States at the time of, or prior to, inception of active service, to the extent to which any such defect, disorder, or infirmity was so made of record."

So far as the language of this petition is concerned, the alleged contention of the bureau, or of its director, that the disability of petitioner was not of "service origin" or "service connection," and "therefore not compensable," may have related, or did in fact relate, merely to the character of the cause of such disability (as being in, or outside of, his line of duty), and not to the period of time during which such disability was caused. Furthermore, petitioner does not deny that a military record was made by proper military authorities at the time of, or prior to, his acceptance into military service, showing that he then suffered from such disabilities, and that there was proof before the Director of the United States Veterans' Bureau tending to show that his present disability arose from "defects, disorders, or infirmities made of record in any manner by proper authorities of the United States at the time of, or prior to, inception of active service." It may be that it was the contention of the director or the bureau that such disability resulted from some such defect, disorder, or infirmity so made of record, and it may be, therefore, that the asserted contention of said bureau that said disability was not "of service origin" had reference to the time of the injury or contraction of the disease, and that for the reason just mentioned such contention was correct.

In the absence of any allegation denying that the disability of petitioner resulted from a defect, disorder, or infirmity so recorded, this court is not at liberty nor willing to indulge in any assumption or presumption to that effect. Indeed, if presumption be proper under the circumstances, it should be the usual one that the United States officials properly performed, rather than entirely neglected, their duty. So far as appears in this petition, the Director of the Veterans' Bureau may have had before him a proper military record made by proper United States authorities at the time of, or prior to, the petitioner's acceptance into military service, showing that he then suffered from all the ailments for which he now claims compensation. If so, the case involved merely a question of fact, the power to decide which was properly conferred by Congress upon the Director of United States Veterans' Bureau; and the determination thereof by such director is not, at least on the present petition, reviewable by this court in this cause.

For the reason stated, it becomes unnecessary to consider or discuss other interesting and important questions, some of which have

been argued by counsel, others have suggested themselves, and all of which have received careful attention and study. An order must be entered dismissing the petition.