### BREEN STONE & MARBLE CO. v. UNITED STATES.

### No. 706.

District Court, D. Minnesota, Second Division.

July 3, 1937.

---

[1] The foregoing exceptions were duly taken at the trial.

H. W. Volk, of Minneapolis, Minn., for plaintiff.

George F. Sullivan, U. S. Atty., of St. Paul, Minn.

NORDBYE, District Judge.

The complaint includes four causes of action. The first sets forth that on or about November 30, 1932, the United States entered into a contract with the Lundoff-Bicknell Company, under which the latter agreed to furnish all labor and materials for the construction of a Post Office at Cleveland, Ohio; that subsequently the Lundoff-Bicknell Company entered into a contract with the Haworth Marble Company, whereby the latter agreed to furnish, deliver, and install certain stone, marble, etc., required in the construction of said building; that on July 15, 1933, plaintiff entered into a contract with the Haworth Marble Company whereby plaintiff agreed to procure, fabricate, and deliver to the said building certain interior marble which the Haworth Marble Company was obligated to furnish under its contract; and that plaintiff commenced the performance of its contract on or about January 30, 1934, and at various times thereafter shipped the materials to be furnished thereunder to Cleveland, Ohio, and caused the same to be delivered upon the site of said Post Office Building.

It is alleged that the stone, marble, and other materials so furnished by plaintiff were installed and used in the construction thereof with the knowledge and consent of defendant, and that the same were inspected, approved, and accepted by the agents of the defendant in charge of the construction work; that plaintiff has complied with all applicable codes and with the presidential reemployment agreement; and that, by reason thereof, and because labor costs in the production and fabrication of materials furnished for said building were increased on account of said compliance in the sum of $1,204.57, plaintiff seeks to recover said amount under the Act of June 16, 1934, 41 U.S.C.A. §§ 28–33.

The second cause of action seeks to recover $187.62 by reason of increased costs of production and fabrication of materials furnished to the Post Office at Spring-field, Ohio. The contract between the United States and the general contractor is dated November 7, 1932. Subsequently, a contract was entered into between the general contractor and the Haworth Marble Company, under which the latter agreed to furnish and install certain of the stone and marble. The Haworth Marble Company and the plaintiff entered into a contract on June 9, 1934, whereby the plaintiff agreed to procure, fabricate, and deliver certain of the interior marble. Plaintiff commenced work on August 6, 1934.

The third cause of action seeks to recover the sum of $140.01 by reason of increased costs of production and fabrication of materials furnished to the Post Office at Milton, Pennsylvania. The main contract was entered into by the Fred C. Rowley Company and the United States on February 8, 1933. The Pittsburgh Cut Stone Company was the stone and marble subcontractor. On November 13, 1933, plaintiff entered into a contract with the Pittsburgh Company substantially the same as set forth above, and commenced work thereon on or about June 20, 1934.

The fourth cause of action seeks to recover the sum of $115.62. The general contract is between the United States and N. P. Severin Company for the construction of a Post Office at Newark, New Jersey. The latter entered into a contract for the procuring and installation of certain stone and marble for said Post Office with Domestic Marble & Supply Company, Inc., and on November 16, 1933, the Domestic Company entered into a contract with the plaintiff whereby the former sublet to the plaintiff the furnishing of some of the stone for said building.

Plaintiff makes the same allegation in all of the causes of action with reference to the delivery, installation, and approval of the materials furnished, and with reference to the compliance with the codes and the President's reemployment agreement. Plaintiff further alleges with respect to the four causes of action that, while codes for various industries were being considered, formulated, and adopted, the President of the United States in a public statement promised that the Government would reasonably compensate all persons who sustained damages or increased costs by reason of their compliance with the Act of June 16, 1933, or with the various codes adopted pursuant thereto, or

984

hy reason of increased costs of materials furnished on government contracts. It is alleged that, in compliance with the Act of June 16, 1934, claims for the above amounts were filed and presented to the Comptroller General of the United States, but that the same were disallowed for the reason that plaintiff did not perform work or furnish material *direct* to the contractor under the government contract. The pertinent portion of the Act of June 16, 1934, reads as follows: "The Comptroller General of the United States is authorized and directed to adjust and settle on a fair and equitable basis claims of persons who entered into a contract or contracts with the United States prior to August 10, 1933, including subcontractors and materialmen performing work or furnishing material or necessary fuel direct to the contractor under such contracts, for additional .costs incurred by reason of compliance. on and after August 10, 1933 with a code or codes of fair competition approved by the President under section 3 of the Act approved June 16, 1933, known as the 'National Industrial Recovery Act,' [section 703 of title 15], or by reason of compliance with an agreement with the President executed under section 4 (a) of said Act [section 704 of title 15] in the performance after August 10, 1933, of the contract or any part thereof."

It is not necessary to consider individually the various grounds urged by the Government in support of its motion for dismissal. Suffice it to say that this court has no jurisdiction if the remedy provided in the Act of June 16, 1934, is exclusive. It is ,evident that Congress intended to vest in the Comptroller General complete discretion and exclusive authority in the factual determination of the amount, if any, due the claimant. He is authorized and directed "to adjust and settle on a fair and equitable basis" such claims.

That Congress may create a right in individuals against itself, and is under no obligation to provide a remedy through the courts, is well settled. See United State v. Babcock, 250 U.S. 328, 331, 39 S.Ct. 464, 63 L.Ed. 1011, and cases cited. Further, where a special right is given by a statute and in that statute a special remedy is provided, such remedy is generally considered exclusive. United States v. Babcock, supra, 250 U.S. 328, at page 331, 39 S.Ct. 464, 63 L.Ed. 1011, and cases cited.

It is true that the denial of plaintiff's claim by the Comptroller General was based solely on the construction of the act, and it may be urged that Congress did not intend to give exclusive authority to the Comptroller General on questions of construction from which there would be no appeal.. There are cases which recognize the jurisdiction of the courts even where there is a special right and a special remedy created in the same act, if the decision involves no disputed question of fact and where the denial of compensation rests wholly upon the construction of the act. See Medbury v. United States, 173 U.S. 492, 498, 19 S. Ct. 503, 43 L.Ed. 779; Parish v. Mac-Veagh, 214 U.S. 124, 29 S.Ct. 556, '53 L. Ed. 936; McLean v. United States, 226 U.S. 374, 33 S.Ct. 122, 57 L.Ed. 260; United States v. Laughlin, 249 U.S. 440, 39 S.Ct. 340, 63 L.Ed. 696. But it is evident from the very nature of the claims which would necessarily be submitted under the Act of June 16, 1934, that a factual determination by the Comptroller General would be required. The act calls for an adjustment and settlement of all claims presented. Such determination is entirely within the discretion of the tribunal appointed by Congress. The determination of the fairness and equitableness of the adjustment is entirely for the Comptroller. The court is not vested in the act with any such discretion, and if it were determined that the Comptroller erred in his construction of the act herein, it is evident that the adjustment of plaintiff's claim would nevertheless involve the exercise of that special authority and discretion which is solely vested in the Comptroller. There is no provision for a review of his finding by the court. The determination of the claims that are filed becomes purely an administrative function. In view, therefore, of the apparent intent that all claims submitted under this act must be subjected to the experience, peculiar knowledge and discretion of the Comptroller, it must follow that Congress, by the special remedy provided, intended to make such remedy exclusive. It must have intended to make the Comptroller's decision on both law and fact final. No claim could be ultimately determined without resort to the Comptroller's discretion. Considering the entire act, the court is clear that exclusive and final jurisdiction rests with the Comptroller General, so that claims under the act are not within

the jurisdiction of this court. It follows, therefore, that this court is without jurisdiction.

 If this court did have jurisdiction to determine the construction of the act, the view of the Comptroller, as expressed in his denial of plaintiff's claim, must be affirmed. Plaintiff does not come within the class of contractors, subcontractors, or materialmen in whom is created the right. No materials were furnished by plaintiff *direct* to the contractor in any of the causes of action set forth. Concededly; Congress intended to limit the rights created against the United States to those persons specifically mentioned therein. It must have foreseen that, if all persons who may have indirectly contributed work and material to a government project were to be included in those who might press claims for additional costs by reason of compliance with the code, the numbers would not only be multitudinous, but the problems presented would be very complex and confusing. Assume, for instance, that the general contractor sublet the electrical construction to subcontractor A. A sublets the furnishing of the electrical fixtures to B. B sublets the furnishing of the glass electrical fixtures to C. C sublets the furnishing of a particular type of glass to D. D contracts with the glass manufacturer for the glass in question. It is apparent that all of these subcontractors may have been adversely affected by reason of contracts entered into prior to the adoption of the act, but the only subcontractor that furnished material direct to the contractor under his, that is, the contractor's contract, is A. Congress must have intended to limit the right created in the act to the general contractor and to subcontractor A. If the words of the act are to be given their ordinary, usual and customary interpretation, the Comptroller's decision is sound. The court has been cited to no case, nor to any sound reasoning to the contrary.

Plaintiff seeks to urge jurisdiction of this court by reason of an implied contract under the Tucker Act, 28 U.S.C.A. § 41 (20), based on the public proclamation of the President of the United States that, so far as any loss or damage would be sustained on contracts affecting government work, he would secure compensation from Congress, and that pursuant to the President's request and pronouncement, Congress passed the Act of June 16, 1934. That such announcement of the President, in absence of legislation by Congress, does not bind the Government is elementary, nor does it give rise to any implied contract that can be enforced under the Tucker Act. See Hooe v. United States, 218 U.S. 322, 31 S.Ct. 85, 54 L.Ed. 1055. Plaintiff's only recourse to obtain recognition of its claim is before the Comptroller General. No other right, express or implied, is created by the President's proclamation or the legislation enacted in pursuance thereof.

It may be observed that the contracts entered into in the second, third, and fourth causes of action were consummated after August 10, 1933. It may be urged that plaintiff was aware of the increased costs by reason of the code provisions when these contracts were entered into, but in view of the fact that the disposition of this case does not require any finding on the merits, the court expresses no opinion thereon.

The complaint will be dismissed. It is so ordered.