**AYCOCK–LINDSEY CORPORATION v.
UNITED STATES.**

No. 12353.

United States Court of Appeals
Fifth Circuit.

Dec. 23, 1948.

Lucien H. Boggs and Delbridge L. Gibbs, both of Jacksonville, Fla., for appellant.

Damon G. Yerkes, Asst. U. S. Atty., of Jacksonville, Fla., and Isidor Lazarus, Atty., Dept. of Justice, of Washington, D. C., for appellee.

Before HUTCHESON, SIBLEY and WALLER, Circuit Judges.

WALLER, Circuit Judge.

Two questions are involved in this case: (1) whether or not the District Court has jurisdiction under the Tucker Act [1] of this action by a naval stores producer to recover subsidy payments under the Federal Soil Conservation and Domestic Allotment Act on the theory that Appellant's claim arose under a law of Congress and also under an implied contract which it performed and which entitled it to the payment of a subsidy under the regulations of the Department of Agriculture governing the naval stores production and conservation program of such Department; (2) whether or not there was a determination by the Secretary of Agriculture of the facts in this case that was conclusive so as to preclude judicial review of the law applicable to such facts. If Question No. 1 were to be answered in the affirmative and No. 2 were to be answered in the negative, there would also arise a third question as to whether Plaintiff and its wholly-owned subsidiary should be deemed to be as a single corporation or entity in applying the limitation of $10,000 payable to any one person under the Act.[2] The lower Court, believing that it was without jurisdiction, did not undertake to pass upon the third question and we will, therefore, omit it from this discussion.

Prior to the 1939 naval stores producing season the appellant was carrying on naval stores operations in Dixie and Lafayette Counties, Florida. Its operations in Dixie County were under leases of timber executed to it by Brooks-Scanlon Corporation and by Putnam Lumber Company, which leases contained specified minimum requirements for working the timber for naval stores production. By reason of such requirements, appellant was unable to comply with the program for the curtailment of naval stores production promulgated by the Department of Agriculture under the Soil Conservation and Domestic Allotment Act, 16 U.S.C.A. § 590a et seq.[3]

Appellant had, also, a substantial naval stores operation in Lafayette County on timber which it owned outright, or on which it held leases containing no restrictive requirements such as would prevent the operation from coming under the provisions of the Soil Conservation and Domestic Allotment Act. So in order to bring the Lafayette County timber within that program, a separate corporation, Mayo Rosin Company, was organized in 1938 to take over the Lafayette County operations. This procedure met with approval of the officer in charge of the United States Conservation Program as revealed by a letter to appellant dated November 15, 1938. Pursuant to this arrangement the Mayo Rosin Company, during the years 1939-1943, inclusive, carried on this operation in conformity with the program. It also received the appropriate subsidies therefor except for the years 1942 and 1943.

The program prior to 1942 was one designed to curtail the production of naval stores, but the policy and program were changed and in 1942 and 1943 subsidies were paid for increased, rather than curtailed, production. Under the program for

---

[1] The Tucker Act, Title 28 U.S.C.A. § 41(20) [now § 1346] gives the District Court jurisdiction: "* * * concurrent with the Court of Claims, of all claims not exceeding $10,000 founded upon the Constitution of the United States or any law of Congress, or upon any regulation of an executive department, or upon any contract, express or implied, with the government of the United States. * * *"

[2] The question was not presented to the lower Court, nor argued here, as to whether the District Court had jurisdiction under Title 50 U.S.C.A.Appendix, § 902(m), to grant a declaratory judgment based upon any act or failure to act by the Department of Agriculture contrary to the Emergency Price Control Act or "other Acts of Congress relating to the production or sale of agricultural commodities, * * *."

[3] The Soil Conservation and Domestic Allotment Act will sometimes hereinafter be referred to as "the Act".

increased production the covenants in the appellant's leases on timber in Dixie County no longer stood in the way, so that the appellant was then able to come within, and comply with, the latter program. Accordingly it thereupon fulfilled all requirements of the Department and became entitled—according to its contentions—to the subsidy payments on its operations in Dixie County. These subsidy payments were made to it, as well as to the Mayo Rosin Company, for the year 1942. In 1943 the two companies again complied with the requirements for the payment of subsidies for that year, but before payment was made for 1943, the Solicitor for the Department of Agriculture rendered an opinion to the effect that appellant and its wholly-owned subsidiary, Mayo Rosin Company, should be treated as a single enterprise or unit.[4] The Regional Fiscal Agent of the Forest Service advised the appellant, on July 19, 1944, of the opinion of the Solicitor, and that pursuant thereto the subsidy of the two companies would have an over-all limitation of $10,000, and that the excess paid in the year 1942 would be deducted from the subsidies that otherwise would have been payable in the year 1943. By reason of this reversal of position the appellant and its subsidiary, Mayo Rosin Company, which were entitled under the prior arrangement, to $7,220.10 and $7,708.91, respectively, had their claims reduced to $572.33 and $1,431.54, respectively. The appellant has brought this suit under the Tucker Act, Title 28 U.S.C.A. § 41(20), and under the Soil Conservation and Domestic Allotment Act, Title 16 U.S.C.A. § 590a et seq., to recover the difference between the amount payable to both corporations as separate entities under the program as applied prior to 1943.

In sustaining the defendant's motion to dismiss the complaint the lower Court held: (1) that the Soil Conservation and Domestic Allotment Act did not expressly, or by implication, waive the immunity of the United States to suit; (2) Plaintiff's compliance with the Act did not constitute a contract, express or implied, which obligated the United States to pay the subsidy within the purview of the Tucker Act; (3) that under Section 590n of the Act and Section 1385 of Title 7 U.S.C.A., Agricultural Adjustment Act, the Secretary of Agriculture was empowered to determine with finality the facts constituting the basis for payment under the Act, and that such an official determination was not reviewable; (4) that the Secretary had made his determination in this case; and (5) that plaintiff had alleged that the administrative remedies thus provided by the Act had been exhausted.

The first and the most difficult question involved in the case is whether jurisdiction is accorded to the appellant to sue the United States under the Tucker Act.

■■ The United States insists that the statute, regulation, and the arrangement to pay a subsidy to naval stores producers who voluntarily complied with either the curtailment program or the increased production program constituted no contract, express or implied, and that the subsidy was a mere gratuity, dependent upon Congressional appropriations, the number of participants, the extent of compliance, the determination by the Secretary, and was so indefinite in amount that no enforceable claim in favor of the complying operator was established. It further contends that the claim was not founded upon any law of Congress or regulation of an executive department. We do not understand the contention of the appellee to be that the making of these subsidy payments did not have Congressional authority or sanction, but that the Act in question under which the Secretary was authorized to assist in voluntary action calculated to curtail production, created no enforceable claim or right of action against the Government. The Tucker Act does not provide that a statute of Congress upon which a claim is founded shall also provide that suit may be maintained against

---

[4] The Solicitor did not find that the second corporation was formed for the purpose of evading the $10,000 limitation but, on the contrary, he states in his letter: "Therefore, if, as we assume, the two corporations in question are owned by the same person or groups of persons, we are compelled to conclude that they have the effect of evading the $10,000 limitation, although, as the records seem to show, the second corporation was not formed for that purpose."

the United States for claims arising under such statute. The authority for a suit is found in the general terms of the Tucker Act and need not be reiterated in every enactment of Congress upon which a claim against the United States could be "founded".

■ Moreover, it definitely appears that the claim is also based upon a regulation of an executive department of the Federal Government and, therefore, comes within another clause of the Tucker Act. The appellee does not contend that the Secretary of Agriculture was not authorized to inaugurate and maintain either the curtailment, or the increased-production, program. When, therefore, the Secretary of Agriculture published bulletins and promulgated rules providing for the payment of subsidies to those naval stores producers who accepted the offer by voluntarily coming under, and complying with, the Act, there was revealed the traditional essentials of a contract, namely, an offer and an acceptance, to the extent that we should hesitate to hold that there was not at least an implied contract to pay subsidies, in some amount, and that a claim thereunder would also be founded upon a regulation of an executive department. In the payment of such amounts there must, of course, be equality of treatment among those similarly situated. If the Secretary of Agriculture pays to A a subsidy of $165 for complying with the program as to 11,000 turpentine faces, is there not some sort of an implied obligation that the Secretary of Agriculture should also pay to B $165 for complying with the program as to his 11,000 turpentine faces, unless it appears that these parties are AB instead of A and B?

■ In view of the numerous requirements for the naval stores operator to put himself in position to receive the payments, we regard the subsidies not as gratuities but as compensatory in nature, such as they

were held to be by the Emergency Court of Appeals in reference to slaughterers in Illinois Packing Company v. Snyder, Administrator, 151 F.2d 337, 339.[5] At any rate we regard the subsidies as earned in like manner as did the Supreme Court, in Mayo v. U. S., 319 U.S. 441, 63 S.Ct. 1137, 1138, 87 L.Ed. 1504, 147 A.L.R. 761, in holding that farmers who had carried out certain soil-building practices were entitled to grants for the purchase of fertilizer under the same Act involved here. The Supreme Court stated: "The soil-building and soil-conserving practices, when carried out by a participating farmer, entitle him to a grant or benefit payment. Section 8. In order that the farmer may earn this grant, phosphate fertilizers are furnished to him in advance by the Government through the county committee."

If carrying out a soil-conserving program would "entitle" the farmer to a grant, it would seem that carrying out a timber-conserving program under the same Act would likewise entitle a turpentine farmer to like grants.

The second ground assigned by the lower Court for dismissal is the least difficult.

Sec. 590n of Title 16 U.S.C.A., Sec. 14, Soil Conservation and Domestic Allotment Act, provides that: "The facts constituting the bases for any payment or grant or the amount thereof authorized to be made under section 590g or 590h of this title, when officially determined in conformity with rules or regulations prescribed by the Secretary of Agriculture, shall be reviewable only by the Secretary of Agriculture."

Sec. 1385 of Title 7 U.S.C.A., Sec. 385, Agricultural Adjustment Act, provides that: "The facts constituting the basis for any Soil Conservation Act payment, parity payment, or loan, or the amount thereof, when officially determined in conformity with the applicable regulations prescribed by the Secretary or by the Commodity

5 The Court in the cited case said: "Furthermore, it is hardly accurate to describe the meat subsidies as a gratuity or bounty. Such subsidies are closely articulated with the price control program, and, as contemplated by Congress, may operate as compensatory in nature so as to validate a lower level of legal maximum prices than otherwise would be permissible under the standards laid down in the Price Control Act for the guidance of the Price Administrator. See Heinz v. Bowles, Em.App.1945, 149 F.2d 277, 280, 281; Rubin v. Bowles, Em.App., 150 F.2d 860."

Credit Corporation, shall be final and conclusive and shall not be reviewable by any other officer or agency of the Government."

Since the two sections are so similar in their terms, separate consideration thereof will not be necessary.

The petition fails to reveal, by way of defense, any findings of "facts constituting the bases for any payment or grant or the amount thereof" that were "officially determined in conformity with rules or regulations prescribed by the Secretary of Agriculture." The record likewise fails to show that any basic facts so officially determined were ever reviewed by the Secretary of Agriculture. The order of the Court dismissing the complaint states that "The Secretary made his determination in this case and plaintiff alleges that it has exhausted its administrative remedies," but we are not advised as to what facts, if any, were officially determined in conformity with applicable regulations prescribed by the Secretary.

In connection with the study of this phase of the case it will be necessary to bear in mind that there are no disputes as to the facts. It is agreed that the amount which the Department offered to pay is the correct amount if appellant and its subsidiary are to be treated as one concern; otherwise, the appellant would be entitled to the payment of the amount which it claims.

It cannot be properly urged that the Court will be called upon to review facts constituting the basis for the payments or grants as to whether or not the second corporation was formed for the purpose of evading the $10,000 limitation since it will be remembered that the Solicitor for the Department in the letter holding that the two corporations should be treated as one expressly found that the record seem to show that the two corporations were not formed for the purpose of evading the $10,-000 limitation. If this finding be construed as final, such finding was one favorable to the appellant, of which no review is sought. The statement of the Solicitor that "not only must there be an absence of purpose

to evade the limitation, but the end result must show that the person would obtain no greater payment than he would be entitled to if the corporate device had not been used" is only a legal conclusion and is the only controversy in the case on the merits.

█ We do not interpret the Act as preventing, or undertaking to prevent, a review by the courts of the legal questions involved, but only to preclude a review of the facts constituting the basis for payment, and, therefore the Court below was not precluded from adjudicating the legal question as to whether or not the two corporations should be treated as one, as well as such other questions as may be developed upon the coming in of defendant's answer. See Dismuke v. U. S., 297 U.S. 167, 56 S.Ct. 400, 80 L.Ed. 561; U. S. v. Laughlin, 249 U.S. 440, 441, 39 S.Ct. 340, 63 L.Ed. 696.

In the light of these views we conclude that the lower Court was not without jurisdiction to hear and determine the case, and that it committed error in sustaining the motion to dismiss.

Reversed and remanded.

HUTCHESON, Circuit Judge (dissenting.)

It may be that in dissenting here, I am the proverbial man who "convinced against his will [1] is of the same opinion still". I hope not. As I see this case, the basis of the plaintiff's claim is entirely different from that of Dismuke's. There it was conceded that Congress had intended to make, and had made, provisions, as a claim of right, for Civil Service retirement annuity of the kind for which plaintiff was suing. Here the fundamental position of the Government is that the whole matter involved was on a volunteer basis. It insists that the invoked section creates "no claim in favor of any producer in the sense that it gives him a right to demand the payment to him of a specific sum of money from the public treasury merely because he elects voluntarily to follow a sound conservation program on his land", and "nothing in the

[1] United States v. Dismuke, 5 Cir., 76 F.2d 715. Affirmed "for reasons stated in this opinion and not those stated in the opinion of the court below", Dismuke v. U. S., 297 U.S. at page 174, 56 S.Ct. at page 404, 80 L.Ed. 561.

announcement by the Secretary gave the appellant a right to demand a conservation payment". I agree with this position, and, agreeing, I think the district judge was right in dismissing the complaint for want of jurisdiction as not founded upon a contract, express or implied, under the Tucker Act.

I agree, too, with the reason given by the district judge for dismissing the case, that whether there was a right to a conservation payment and the amount of it were facts whose determination by the Secretary were put by the statute beyond review.

The two cases cited by the majority as authority for their view do not support it. In neither of those cases was the jurisdictional question here presented, decided, or considered. Both of them were decided by specially constituted tribunals whose jurisdiction did not extend to questions of the kind presented here. In the Illinois Packing Co. case, a decision by the Emergency Court of Appeals, the sole question was the jurisdiction of this special court of appeals. Nothing was said about the question at issue here. If anything had been said about it, it would have been bound to be dicta.

The quotation from Mayo's case is no better authority. That was not a suit, as here, under the Tucker Act, to enforce a claim for subsidy payments. That was an appeal from a special three judge court of strictly limited jurisdiction to enjoin state officers from enforcing against the United States the provisions of the Florida fertilizer law. The language quoted from that case in the majority opinion must be read in the light of the issues there presented. In using it, the Supreme Court was not intending to decide, it did not decide, indeed it could not have decided, the jurisdictional question raised here.

There is another reason, not assigned by the district judge, but called attention to in the majority opinion, why the case should have been dismissed. This is because, assuming that the statute did create a suable right, the suit filed here was premature. As set out in the majority opinion, the statutes, under which the allowance was made, provided for final review by the Secretary of Agriculture of the "facts constituting the bases for any payment or grant or the amount thereof * * *". Neither the petition nor the exhibits attached to it show that the Secretary has made, or has attempted to make, a final determination in the case. I respectfully dissent from the judgment of reversal.