**AYCOCK–LINDSEY CORPORATION v. UNITED STATES.**

Civ. No. 1320.

United States District Court
S. D. Florida, Jacksonville Division.

Jan. 4, 1950.

Boggs & Gibbs, Jacksonville, Fla. (Delbridge L. Gibbs and Lucien H. Boggs, Jacksonville, Fla.), for plaintiff.

H. G. Morison, Asst. Atty. Gen., Washington, D. C., Herbert S. Phillips, U. S. Atty., Tampa, Fla., Damon G. Yerkes, Asst. U. S. Atty., Jacksonville, Fla., for defendant.

DE VANE, District Judge.

This is an action by plaintiff to recover from the United States compensation alleged to be due and payable under the provisions of Section 8 of the Soil Conservation and Domestic Allotment Act, 49 Stat. 163, 1148, as amended, 16 U.S.C.A. §§ 590a to 590q, for participating in the 1943 Naval Stores Conservation Program announced by the Secretary of Agriculture. The jurisdiction of this court is invoked under the provisions of the Tucker Act as they are presently codified in 28 U.S.C.A. § 1346 (a) (2).

This case has already been to the Court of Appeals and in Aycock-Lindsey Corporation v. United States, 5 Cir., 171 F.2d 518, 519, the court reversed a judgment sustaining defendant's motion to dismiss the complaint. In its opinion the Court of Appeals said: "Two questions are involved in this case: (1) whether or not the District Court has jurisdiction under the Tucker Act of this action by a naval stores producer to recover subsidy payments under the Federal Soil Conservation and Domestic Allotment Act on the theory that Appellant's claim arose under a law of Congress and also under an implied contract which it performed and which entitled it to the payment of a subsidy under the regulations of the Department of Agriculture governing the naval stores production and conservation program of such Department; (2) whether or not there was a determination by the Secretary of Agriculture of the facts in this case that was conclusive so as to preclude judicial review of the law applicable to such facts. If Question No. 1 were to be answered in the affirmative and No. 2 were to be answered in the negative, there would also arise a third question as to whether plaintiff and its wholly-owned subsidiary should be deemed to be as a single corporation or entity in applying the limitation of $10,000 payable to any one person under the Act. The lower Court, believing that it was without jurisdiction, did not undertake to pass upon the third question and we will, therefore, omit it from this discussion."

Upon the remand of the case to this court in answer and an amended answer were filed by the defendant and both plaintiff and defendant moved for summary judgment on the pleadings. Both parties agree that a trial would show nothing more than is disclosed by the complaint, answer and amended answer.

Acting pursuant to Section 8 of the Soil Conservation and Domestic Allotment Act, the Secretary of Agriculture has announced annually an agricultural conservation program applicable to agricultural producers generally. The program was divided by the

Secretary of Agriculture into three parts, namely:

1. National Agricultural Conservation Program, which apparently has nothing to do with the naval stores industry.

2. Insular Agricultural Conservation Program, which is applicable to the territories and possessions of the United States, e. g. Hawaii, Alaska, Puerto Rico, etc.

3. Naval Stores Conservation Program. Plaintiff falls within the latter group.

The Secretary of Agriculture was authorized by this Act to issue bulletins applicable to the entire conservation program as a whole and to each separate unit established thereunder by him. The parties are in disagreement as to whether or not parts of the National Agricultural Conservation Program (1. above) bulletins are also applicable to the Naval Stores Conservation Program (3. above). This controversy will be considered and disposed of later in this memorandum decision.

When the Naval Stores Conservation Program went into effect, plaintiff had two separate turpentine timber operations. One was on lands in Dixie County. The other was on lands in Lafayette and Suwannee Counties. The Dixie County lands were held and operated under leases from two lumber companies that precluded a curtailment of operations sufficient to enable plaintiff to participate in the Naval Stores Conservation Program. The lands in Lafayette and Suwannee Counties were not subject to such restrictions, but participation in the program was not possible with both turpentine operations in one ownership, because the regulations of the Secretary of Agriculture required participation on all lands operated by one ownership.

By letter dated November 10, 1938, plaintiff proposed to defendant that it segregate its two turpentine operations by organizing a separate corporation to conduct turpentine operations on lands in Lafayette and Suwannee Counties and that the new corporation then participate in the 1939 and subsequent programs. Plaintiff requested assurance that such corporation taking over the Lafayette and Suwannee Counties lands would be eligible to participate.

On November 15, 1938 Mr. J. Ward, who was in charge of the program for defendant, gave the assurance as requested, stating that if plaintiff's two operations were segregated and conducted through separate corporations the corporation that could qualify under the program would receive benefit payments on the particular operation which was put under the program. Mayo Resin Company was thereupon organized to conduct the turpentine operations on the lands in Lafayette and Suwannee Counties and these lands were conveyed to it. All stock in Mayo Resin Company was and still is owned by plaintiff. The new corporation qualified and participated in the 1939 and subsequent programs and received conservation payments from the Secretary for all years, except the year, 1943, which is the year involved in this suit.

Prior to 1942 the Naval Stores Conservation Program was one designed to curtail the production of naval stores but the policy and program were changed and in 1942 and 1943 subsidies were paid for increased rather than curtailed production. Under the program for increased production the covenants in plaintiff's leases on timber in Dixie County no longer stood in the way and plaintiff was able to come within and comply with the latter program, which it did; and it fulfilled all requirements of the Department of Agriculture to entitle it to the subsidy payments on its operations in Dixie County. These subsidy payments were made to it as well as to Mayo Resin Company for the year, 1942. The payments made to both exceeded $10,000. In 1943 the two companies again complied with the requirements for the payment of subsidies for that year, but before payments were made for 1943 the Solicitor for the Department of Agriculture rendered an opinion to the effect that plaintiff and its wholly-owned subsidiary, Mayo Resin Company, should be treated as a single enterprise or unit. The Regional Fiscal Agent of defendant thereupon advised plaintiff, on July 19, 1944, of the opinion of the Solicitor and that pursuant thereto the subsidy of the two companies would have an overall limitation of $10,000

and that the excess paid the two companies in the year 1942 would be deducted from the subsidies that otherwise would have been paid in the year 1943. By reason of this reversal of position plaintiff and its subsidiary, Mayo Resin Company, which were entitled under the prior ruling to $7,220.10 and $7,708.91, respectively, had their claims reduced to $572.33 and $1,431.54, respectively. Plaintiff brought this suit under the Tucker Act to recover the total amount claimed to be due it.

The following questions are presented by the pleadings and the rival motions of the parties for summary judgment:

1. Does this court have jurisdiction of the action under the provisions of the Tucker Act in view of the showing made by defendant in its amended answer that the claim presented by plaintiff is only a part of a single claim possessed by plaintiff and its agency and instrumentality, Mayo Resin Company, the entire claim of both being in excess of $10,000?

2. With respect to the merits, is plaintiff's claim limited by the $10,000 limitation on payments to any one person contained in Section 8(e) of the Soil Conservation and Domestic Allotment Act and the regulations of the Secretary of Agriculture duly issued under the Act?

■ It is the opinion of this court that there is no merit to the contention of the defendant that this court is without jurisdiction because the combined claim of plaintiff and Mayo Resin Company is in excess of $10,000. Separately they are each for an amount less than $10,000. If Section 8(e) of the Soil Conservation and Domestic Allotment Act, as amended, and the regulations of the Secretary of Agriculture duly issued under the Act limit the amount of recovery of plaintiff and Mayo Resin Company, then the combined claim of the two cannot exceed the $10,000 limitation. Therefore, this court has jurisdiction however this case goes with respect to the merits.

Passing now to the merits it is noted first that when approval was given by defendant to plaintiff to organize Mayo Resin Company and to convey the properties owned by it in Lafayette and Suwannee Counties to the said company the regulations of the Secretary then in force required participation on all lands operated by one person before such person could qualify under the program. The act of the defendant in permitting the creation of the Mayo Resin Company and the conveyance to it of all those properties of plaintiff which could qualify under the program constituted an interpretation of the Soil Conservation and Domestic Allotment Act to the effect that a parent and subsidiary corporation each had independent existence and independent rights under the Act. If any error was committed by defendant in its interpretation and application of the Act it was committed at this time and if such interpretation was erroneous everything done by Mayo Resin Company and defendant subsequent thereto was illegal. While some have criticized the Soil Conservation and Domestic Allotment Act and its administration by the Secretary of Agriculture others have vigorously defended its purposes and the liberal administration thereof by the Secretary. Under the Act the Secretary was given broad powers in its application and administration and this court is unwilling to hold that the Secretary was in error in finding and holding that a subsidiary and parent corporation each had an independent existence, entitling each to participate in the conservation program authorized by the Act. There are authorities supporting such holding of the Secretary. See International Order of Twelve Knights and Daughters of Tabor v. Fridia, Tex.Civ.App., 91 S.W.2d 404; N. L. R. B. v. Hopwood Retinning Co., 2 Cir., 98 F.2d 97.

■ Defendant concedes here that its action in 1938, in permitting the creation of Mayo Resin Company, the transfer of certain properties to it by plaintiff and the participation by Mayo Resin Company in the Naval Stores Conservation Program in no way violated the Soil Conservation and Domestic Allotment Act, but contends that when the Secretary of Agriculture so changed the regulations that plaintiff could and did qualify under and participate in the program that this act of plaintiff de-

stroyed the independent corporate existence of Mayo Resin Company theretofore recognized by defendant and that the two corporations then became one under the Act and could no longer receive benefits in excess of $10,000 per annum. In connection with this contention it is noted that it was on February 16, 1938 that the Agricultural Adjustment Act of 1938 amended Section 8 of the Soil Conservation and Domestic Allotment Act by adding thereto the new subsection, the relevant portion of which provided that: "Beginning with the calendar year 1939, no total payment for any year to any person under such subsection (b) shall exceed $10,000." Immediately following its enactment the Secretary prescribed regulations applicable thereto. 3 F.R. 2666. Thus it appears that this provision of the Act and the regulations of the Secretary applicable thereto were in effect at the time Mayo Resin Company was organized and first permitted by defendant to participate in the Naval Stores Conservation Program. Obviously, if Mayo Resin Company could be legally organized and permitted to participate in any part of the Naval Stores Conservation Program it could participate in all the program. Had the $10,000 limitation and the regulations of the Secretary of Agriculture applicable thereto gone into effect subsequent to the participation by Mayo Resin Company in the Naval Stores Conservation Program a different question may have been presented in this case, but since both were in effect at the time defendant authorized participation by Mayo Resin Company in the Naval Stores Conservation Program and no subsequent Act of Congress or regulation of the Secretary of Agriculture has rendered that participation illegal defendant will not be heard to say now that it lost its right to participate in the program when the Secretary of Agriculture changed the program in such a way as to permit its parent corporation (plaintiff here) to also qualify and participate in the program.

When the Solicitor for the Department of Agriculture was called upon, in 1944, for an opinion as to whether the $10,000 limitation prohibited the Secretary of Agriculture from paying more than $10,000 to plaintiff and its subsidiary, Mayo Resin Company, he relied upon paragraph (e) of a regulation applicable to the National Agricultural Conservation Program, 7 F.R. 10031, there being no such provision in the Naval Stores Conservation Program. The court has heretofore pointed out that the parties are in disagreement as to whether paragraph (e) of said regulation is applicable in this case. The court finds and holds that it is not material to a determination of the issues in the case. If Mayo Resin Company was ever, at any time, legally entitled to participate in the conservation program, and the court holds that it was, it never lost such right by any act of its own or by any Act of Congress or regulation promulgated by the Secretary of Agriculture subsequent to its qualification and original participation in the program.

The court has fully stated its reasons for holding that plaintiff is entitled to recover the full amount demanded in this case. It has done so to meet the requirements of the Rule which makes it necessary that the court fully set forth its reasons for its holdings in all cases. The court has done this despite the fact that it is of the opinion that a careful reading of the majority opinion of the Court of Appeals in this case, 171 F.2d 518, fully sustains plaintiff's right to recover and the court need do little more in this case than refer to that opinion as authority for its holding here—that plaintiff is entitled to recover the full amount sued for.

A Final Judgment will be entered in conformity with this Memorandum Decision.